# In the

# United States Court of Appeals

## For the Seventh Circuit

————————

No. 06-3108

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

*Plaintiff-Appellant*,

*v.*

SCHNEIDER NATIONAL, INC.,

*Defendant-Appellee*.

————————

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 04-875—**William C. Griesbach**, *Judge*.

————————

ARGUED FEBRUARY 13, 2007—DECIDED MARCH 21, 2007

————————

Before BAUER, POSNER, and WILLIAMS, *Circuit Judges*.

POSNER, *Circuit Judge*. In 2002, shortly after receiving an award from his employer, the Schneider trucking company, for having driven a million miles for the company without an avoidable accident, Jerome Hoefner had a fainting spell and was diagnosed with a condition called "neurocardiogenic syncope." This is a disorder of the nervous system that can produce a sudden drop in blood pressure that in turn reduces the amount of blood reaching the brain, causing the person with the disorder to faint. Schneider's policy is (with a possible exception discussed

later in this opinion) not to employ a truck driver who has the disorder, although it is treatable with medicines such as Florinef and does not prevent a person from satisfying the safety standards required by federal law of anyone who drives, on a public highway, a truck that weighs (with its load) at least 26,001 pounds or is used to transport hazardous materials or at least 16 passengers. 49 U.S.C. § 31136(a)(3); 49 C.F.R. §§ 383.5, 391.11(a).

After being dismissed by Schneider, Hoefner obtained a similar job with another trucking company. Nevertheless the EEOC brought suit on Hoefner's behalf against Schneider, contending that the company had fired him because it mistakenly believes that neurocardiogenic syncope is a disabling condition within the meaning of the Americans with Disabilities Act, which among other things forbids discrimination in employment against persons mistakenly believed to be disabled. 42 U.S.C. § 12102(2)(C). The district court granted summary judgment for Schneider, precipitating this appeal.

There usually and here are two issues to resolve in such a case. The first is whether the employer's decision to terminate or take some other adverse employment action against the employee was motivated by a mistaken belief that the condition precludes him from engaging in some activity. If so, the second question is whether the activity that the employer mistakenly believes the employee to be disabled from engaging in is a "major life activit[y]." *Id.*, §§ 12102(2)(A), (C). Suppose an employer mistakenly thinks that a person who has a hernia cannot lift 150 pounds and therefore is disabled from working for a moving company that specializes in moving refrigerators and grand pianos. The lifting of 150 pounds is not a major life activity. So unless the employer thought that a

hernia that prevented such lifting substantially limited a life activity that is major—maybe the employer thinks that anyone who can't lift 150 pounds is incapable of *any* type of gainful employment—the employee would not be "regarded [by the employer] as having such an impairment," § 12102(2)(C), and so the employer would not have violated the Act. E.g., *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 489-91 (1999); *Rooney v. Koch Air, LLC*, 410 F.3d 376, 382 (7th Cir. 2005).

The Commission's case relies primarily on statements by a nurse who heads Schneider's occupational health unit and believes that anyone with Hoefner's condition should be disqualified from driving Schneider's trucks as "a matter of safety and direct threat." But the reason for this belief, as she further explained and the Commission does not question, is that two years before Hoefner's fainting spell another driver for Schneider, Michael Kupsky, whom Schneider had hired shortly after Kupsky had been diagnosed with neurocardiogenic syncope while driving for another trucking company, had driven a Schneider truck off a bridge and been killed. Schneider was "advised that it appeared that [Kupsky] may have fallen asleep" at the wheel. The incident precipitated the company's adoption of a "zero tolerance" policy for drivers with neurocardiogenic syncope. The nurse stated that "Schneider made the right decision after the Kupsky accident . . . . [W]e don't know what caused that accident. We'll never know. And Schneider is not going to take the chance that . . . that horrible accident happens to anybody else." The executive who fired Hoefner echoed what the nurse had said: "we simply cannot take the risk that while driving, you would lose consciousness."

There is nothing to suggest that Schneider has a mistaken understanding of neurocardiogenic syncope. It simply

is unwilling to risk a repetition (a possible repetition, since Kupsky's autopsy could not determine whether he had fainted and if so whether that was why he had veered off the road) of the Kupsky calamity. The risk is not zero, as the EEOC suggests, even if Florinef is totally efficacious, because Hoefner could forget to take his medicine. Anyway the drug is not totally efficacious. It merely reduces the risk of dehydration, and that is only one risk factor for neurocardiogenic syncope.

No doubt the risk that a person afflicted with this disorder will faint while driving is small, as otherwise Hoefner wouldn't be allowed to drive big trucks, as he is, for the trucking company that with full knowledge of his medical history hired him after Schneider fired him. But Schneider is entitled to determine how much risk is too great for *it* to be willing to take. "[A]n employer is free to decide that physical characteristics or medical conditions that do not rise to the level of an impairment—such as one's height, build, or singing voice—are preferable to others, just as it is free to decide that some limiting, but not substantially limiting, impairments make individuals less than ideally suited for a job." *Sutton v. United Air Lines, Inc.*, *supra*, 527 U.S. at 491. The fact that another employer and, as in all such cases, the worker himself are willing to assume a risk does not compel the worker's current employer to do likewise. *Chevron U.S.A. Inc. v. Echazabal*, 536 U.S. 73 (2002).

Schneider is the nation's largest truck company, employing 13,000 drivers. The more drivers a company employs, the greater the likelihood of the kind of accident that befell Kupsky and could befall Hoefner. Suppose Schneider had no policy against hiring drivers with neurocardiogenic syncope. Then some number of the 13,000 would have

the condition. The EEOC presented no estimate of what that number would be, but syncope is common, "accounting for 3 percent of emergency room visits and 6 percent of hospital admissions." www.americanheart.org/ presenter.jhtml?identifier=4749. Suppose 2 percent of Schneider's drivers had it; that would be 260. The risk that at least one of them would have a Kupsky-type accident could not be thought wholly negligible, and the liability implications for Schneider (should there be an accident that killed or injured someone other than the driver, whose rights against Schneider would be limited to workers' compensation) could be calamitous. The victims' lawyers would wave the Kupsky accident in front of the jury, asking it to award punitive damages because the company had continued to employ drivers with neurocardiogenic syncope after having been warned by Kupsky's accident. The argument for punitive damages would be that employing Hoefner in the wake of Kupsky's accident showed that Schneider had acted in the face of a known risk and was therefore reckless. E.g., *State Farm Mutual Automobile Ins. Co. v. Campbell*, 538 U.S. 408, 419 (2003); *Mathias v. Accor Economy Lodging, Inc.*, 347 F.3d 672, 674-75 (7th Cir. 2003); *Johnson v. Colt Industries Operating Corp.*, 797 F.2d 1530, 1533-34 (10th Cir. 1986).

The argument might not succeed; the risk might be deemed insufficiently large to make Schneider reckless for not eliminating it by barring drivers who have neurocardiogenic syncope. But once burned, twice shy. Because of Kupsky's unfortunate accident, Schneider may be excessively risk averse, as United Air Lines and other airlines (*Sutton v. United Air Lines, Inc.*, 130 F.3d 893, 903-04 (10th Cir. 1997), aff'd 527 U.S. 471 (1999)) may be in refusing to hire pilots who do not have at least 20-100

uncorrected vision. 527 U.S. at 475-76. But as there is no evidence that Schneider exaggerates the severity of Hoefner's condition and the risk he poses as a driver, there is no violation of the Americans with Disabilities Act. *Cassimy v. Board of Education*, 461 F.3d 932, 937 (7th Cir. 2006); *Ogborn v. United Food & Commercial Workers Union*, 305 F.3d 763, 767-68 (7th Cir. 2002); *Katz v. City Metal Co.*, 87 F.3d 26, 32-33 (1st Cir. 1996).

The EEOC has confused risk with risk aversion. Two companies might each correctly believe that the risk of a particular type of accident was 1 in 10,000, yet one company, perhaps because it was small, financially fragile, owned by a trust, or as in this case had had an experience of the risk materializing, might be unwilling to assume the risk. That would be a decision irrelevant to liability under the Americans with Disabilities Act, even if that company's degree of risk aversion was "unique" in its industry. *EEOC v. J.B. Hunt Transport, Inc.*, 321 F.3d 69, 76 (2d Cir. 2003).

But if this is wrong, the EEOC still must lose because there is no evidence that Schneider considers neuro-cardiogenic syncope to impair any "life activity" other than driving a truck for Schneider, and perhaps for some other truck companies (we do not know whether there are any) that like Schneider have safety standards higher than the minimum required by the federal government. That is too esoteric a capability to be judged a "major" life activity. If being able to drive a huge truck or a truck filled with hazardous chemicals safely, or being able to fly a plane or guide climbers to the summit of Mt. Everest, is a major life activity, then virtually the entire population of the United States is disabled, which would be a ridiculous construction to place on the Americans with Disabili-

ties Act. "[E]ven assuming that working is a major life activity"—as the EEOC believes, 29 C.F.R. § 1630.2(j)(3), but the Supreme Court doubts, *Sutton v. United Air Lines, Inc.*, *supra*, 527 U.S. at 492—"a claimant would be required to show an inability to work in a 'broad range of jobs,' rather than a specific job." *Toyota Motor Mfg. Inc. v. Williams*, 534 U.S. 184, 200 (2002); see also *Sutton v. United Air Lines, Inc.*, *supra*, 527 U.S. at 491; *Kupstas v. City of Greenwood*, 398 F.3d 609, 612-13 (7th Cir. 2005). In a "regarded as" case, such as this, the claimant (here the EEOC on the claimant's behalf) would have to show that the employer believed that the claimant had a condition that would disable him from working in a broad range of jobs. Otherwise, minor physical defects would count as impairments of major life activities.

It is true that when it dismissed Hoefner, Schneider invited him to apply for "non-driving" jobs with the company. The Commission asks us to infer that Schneider thought Hoefner disabled from driving any type of truck for any type of trucking company; and the entire spectrum of truck driving might, we assume, be a "broad range of jobs." But the evidence is undisputed that no truck-driving jobs that were not subject to the federal safety standards were open at the time at Schneider. The qualification concerning the type of truck driving is essential. Schneider's president testified that there is a chronic shortage of "over the road" commercial truck drivers. Even if this is taken to imply that there were vacancies at Schneider for over-the-road drivers, such truck-driving jobs, being subject to the federal safety standards, were precisely the jobs for which drivers with neurocardiogenic syncope are ineligible under Schneider's risk-averse policy.

Schneider does have truck-driving jobs at construction sites, which are private property. But at argument Schnei-

der's lawyer stated without contradiction that the trucks
it uses at those sites are so heavy that the federal safety
standards apply, for although the standards are ap-
plicable only to trucks driven on public roads there is no
way to get to or from a construction site without using
such roads. So the company's policy applies to those truck-
driving jobs as well as to over-the-road trucking. Therefore
the fact that Schneider suggested that Hoefner apply for
nondriving jobs (at Schneider—he could and did land an
over-the-road job with another trucker, as we know) does
not imply that Schneider considered him disabled by his
medical condition from holding the kind of truck-driving
job to which the federal standards do not apply. If (as we
do not know) there were other truck-driving jobs at
Schneider, which did not require that the driver comply
with the federal safety standards, still, there were no
openings for such jobs.

This is not to say that the absence of openings is, in and
of itself, exoneration for Schneider. For what if there
were no openings for Hoefner because Schneider believed
that no one with neurocardiogenic syncope should be
employed as a truck driver, period? Our point is only that
given the absence of openings, a mistaken belief that
Hoefner was disqualified from all driving jobs cannot be
inferred from the fact that the company didn't offer him a
driving job. The EEOC, which bore the burden of proof,
did not try to clarify Schneider's offer of nondriving jobs
by asking responsible officers of the company whether it
would have offered Hoefner a driving job if it had had an
opening for a driving job that didn't require that the driver
satisfy federal safety standards. If the answer to the
hypothetical question had been "yes," and there was no
contrary evidence, Schneider would be home free even if

it mistakenly believed that a person with neurocardio-genic syncope should not be permitted to drive big trucks or trucks that carry passengers or hazardous chemicals. The case would be like *Baulos v. Roadway Express Inc.*, 139 F.3d 1147, 1151-53 (7th Cir. 1998), which held that a driver disabled by a sleep disorder only from driving trucks that involve "sleeper duty" was not disabled within the meaning of the Americans with Disabilities Act. That was not a broad range of jobs. See also *EEOC v. J.B. Hunt Transport, Inc.*, *supra*, 321 F.3d at 74-77.

If the answer to the hypothetical question had been "no"—that is, if Schneider would not have employed Hoefner after he was diagnosed with neurocardiogenic syncope even in a truck-driving job that did not have to meet federal safety standards—there would then have been some basis for thinking that Schneider had exaggerated Hoefner's condition and mistakenly thought him disabled from a broad range of jobs even though he was not. Even then, the EEOC would not have made its case, because Schneider's hypothetical admission would be consistent with the company's having decided to set a higher safety standard than law or custom requires, as United Air Lines had done. As we know from *Sutton*, that is a decision the Act does not touch.

AFFIRMED.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*

USCA-02-C-0072—3-21-07