In the

# United States Court of Appeals

### For the Seventh Circuit

No. 10-2363

KEITH POWERS,

*Plaintiff-Appellant,*

*v.*

USF HOLLAND, INC.,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Indiana, South Bend Division.
No. 07 CV 246—**Joseph S. Van Bokkelen**, *Judge.*

ARGUED MARCH 31, 2011—DECIDED DECEMBER 15, 2011

Before CUDAHY, POSNER, and MANION, *Circuit Judges.*

MANION, *Circuit Judge.* Keith Powers injured his back while working for USF Holland, Inc., but following a worker's compensation leave, he successfully returned to work as a long-haul truck driver and worked without incident for two years. As the birth of his child neared, Powers asked to switch from his long-haul driver assignment to a city driver route. After the switch, Powers began having problems with his back and asked to switch back, but the collective

bargaining agreement did not allow for another change within a year, so Holland denied Powers's request. Powers then took a medical leave of absence, but later sought to return to work, again as a long-haul driver, presenting Holland with a medical release which limited him to "road driver work" and "limited dock work." Holland would not allow Powers to return, saying both that it needed clarification on his medical restrictions and that he could not return to work as a truck driver unless he received a medical release without restrictions.

Powers then sued Holland, alleging Holland violated the Americans with Disabilities Act by enforcing a 100% healed policy, by discriminating against him, and by failing to provide him with a reasonable accommodation. Specifically, Powers claimed that he is disabled because his back injury rendered him substantially limited in the major life activity of working. In addition, he claimed that Holland discriminated against him and refused to accommodate his disability by refusing to allow him to return to work as a long-haul road driver with certain medical restrictions. The district court granted Holland summary judgment and Powers appeals.

We conclude that Powers is not substantially limited in the major life activity of working because he is capable of long-haul driving. At most, the record merely shows that Powers is unable to work as a city driver because it involves short hauls and dock

work that requires him to frequently load and unload cargo using a forklift or other lift mechanisms. Therefore, Powers is not disabled within the meaning of the ADA, and accordingly his claims cannot succeed. We affirm.

## I.

Powers began working in the spring of 1999 as a truck driver for Holland. Holland is a freight transportation company which operates terminals throughout the United States, including the one in South Bend, Indiana, where Powers worked. Drivers working out of Holland's South Bend terminal are classified as either city drivers or road drivers. City drivers make short hauls and remain within a one-hundred-mile radius of the South Bend terminal and also perform dock work, primarily the loading of freight into and out of the trucks with a forklift. Road drivers make long hauls and may also load and unload freight. However, since they drive longer distances across state lines, they spend most of their time driving and have substantially less dock work.

In January 2002, Powers injured his back after driving a company truck over a rough patch of road. He was off work and received worker's compensation benefits for about five months before Holland required him to submit to an independent medical examination. Dr. Marshall Matz examined Powers and concluded that he was "capable of resuming his usual gainful employ-

ment activity without limitations or restriction." Based on Dr. Matz's assessment of Powers, Holland ceased Powers's worker's compensation benefits effective May 23, 2002.

Powers returned to work as a road driver in June 2002 and worked for two years without issue. But in March 2004, Powers requested a switch to a city driver position because his wife was pregnant and due to give birth in August, and because his ailing father needed help with his farming business. Holland granted Powers's request to work as a city driver. After the switch, Powers experienced difficulty sitting in and getting in and out of the forklift to do the substantial dock work required of city drivers. As a result, he had problems getting out of bed and bending over. Only one month after making the switch, Powers asked to be placed back in the road driver position. But under the governing collective bargaining agreement, drivers were only allowed one transfer per twelve-month period and accordingly Holland denied Powers's request.

In August 2004, Powers's supervisor reprimanded him for working slowly and after Powers explained that he was working as fast as he could with his back bothering him, Powers was told he would be subject to disciplinary action if he continued to work while experiencing pain. Powers left work that day and on August 29, 2004, Powers's physician, Dr. Magill, recommended that Powers discontinue work until further no-

tice. Holland then placed Powers on unpaid medical leave. A year and a half later, on December 12, 2005, Powers showed up at the Holland South Bend terminal and requested to return to work. He brought with him a release obtained from Dr. Magill, which provided that Powers could return to work on January 3, 2006, with the following restrictions: "(1) limit hours of dock work; (2) avoid dock plates as much as possible; (3) tractor needs to be supplied with air seat, suspension, cab, and (4) road driver work only." Powers acknowledged that he helped Dr. Magill write these restrictions.

The supervisor on duty when Powers arrived at the South Bend terminal sent him to the Wipperman Occupational Health center for a return to work and fitness for duty examination, where on December 13, 2005, Dr. Bergin evaluated Powers. Dr. Bergin told Powers that she needed to review his medical records, but before she received the records, Holland's Human Resources Manager, Stacey VandeVusse, learned of Powers's request to return to work and reviewed the restrictions noted by Dr. Magill. VandeVusse told Dr. Bergin that the return-to-work physical was premature. According to Dr. Bergin, she also indicated that Powers could not return to work until he was released without restrictions. On December 21, 2005, Kurt Kopczynski, the South Bend Terminal Manager, also relayed to Powers Holland's position that he would not be able to return to work with restrictions.

VandeVusse later contacted Powers and told him that Holland needed additional information on the restrictions. Specifically, VandeVusse noted that all drivers performed dock work and that Holland needed clarification concerning what "limited hours of dock work" meant, especially in light of its apparent conflict with the statement "road driver work only." VandeVusse then asked Powers to complete a "Request for Accommodation" form and to return it to her by February 2006. She also provided a job analysis worksheet for the city driver position.

On January 30, 2006, Powers wrote to VandeVusse, informing her that his physician's office "does not do that type of examination," and that if Holland required him to have a physician complete the "Request for Accommodation" form, it would have to schedule and pay for the medical examination and pay Powers his current hourly wage rate for the time spent attending the medical examination. Powers also requested additional time to submit the required paperwork. In response, VandeVusse told Powers that he could have another month to complete the paperwork and explained that he did not need another examination—he simply needed to have his physician provide clarification regarding the limitations by completing the form. Powers never returned the completed Request for Accommodation form to Holland, but contends that Holland was not truly seeking clarification given its statements that he needed a full release to return to work. Powers attempted to return to work

again as a road driver in May 2007, but Kopczynski refused his request and reiterated that Powers would not be allowed to return to work until he had no medical restrictions. Powers currently remains on unpaid medical leave of absence from Holland.

Powers eventually sued Holland alleging Holland had violated the ADA by enforcing a 100% healed policy, by discriminating against him, and by failing to provide him with a reasonable accommodation. Powers also alleged state law claims of negligent infliction of emotional distress and retaliatory discharge.

Holland moved for summary judgment on all of Powers's claims. The district court initially granted Holland's motion in part and denied it in part. Specifically, the district court concluded that Powers was not "disabled" within the meaning of the ADA and therefore that Holland was entitled to summary judgment on Powers's disparate treatment and reasonable accommodation claims. However, the court determined that Powers had presented sufficient evidence that Holland had applied a 100% healed policy to him and thus that Holland was not entitled to summary judgment on Powers's *per se* discrimination claim. The district court also granted Holland summary judgment on Powers's state law claims. Holland moved for reconsideration on the 100% healed policy claim, noting that because Powers was not disabled within the meaning of the ADA, he could not present a *per se* discrimination claim. The district court agreed and

then granted Holland summary judgment on this sole remaining claim. Powers appeals.

## II.

On appeal, Powers argues that the district court erred in granting Holland summary judgment on his ADA claims.[1] Summary judgment is appropriate if there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). We review the district court's decision on summary judgment *de novo*, viewing the evidence in the light most favorable to Powers. *Wackett v. City of Beaver Dam, Wis.*, 642 F.3d 578, 581 (7th Cir. 2011).

Before the district court, Powers presented three types of ADA claims: disparate treatment, failure to accommodate, and *per se* discrimination based on Holland's 100% healed policy.[2] To maintain any of these three claims, though, Powers must be disabled within the meaning of the ADA. *Miller v. Ill. Dept. of Trans.*,

---

[1] Powers does not challenge the district court's ruling on his state law claims.

[2] On appeal, Powers attempts to also argue a retaliation claim, but his EEOC charge did not include a retaliation claim, nor did he argue such a claim before the district court, and therefore he has waived any such claim. *Hottenroth v. Village of Slinger*, 388 F.3d 1015, 1033 (7th Cir. 2004).

643 F.3d 190, 195 (7th Cir. 2011); *see also Henderson v. Ardco, Inc.*, 247 F.3d 645, 653 (6th Cir. 2001) (stating that all courts "agree that a 100% rule is impermissible as to a *disabled* person—but one must first be disabled"). Merely having a physical injury or a medical condition is not enough. *Burnett v. LFW, Inc.*, 472 F.3d 471, 483 (7th Cir. 2006); *Christian v. St. Anthony Medical Center, Inc.*, 117 F.3d 1051, 1053 (7th Cir. 1997). Rather, to be disabled within the meaning of the ADA, the plaintiff must have "(A) [a] physical or mental impairment that substantially limits one or more of the major life activities of [the] individual; (B) [a] record of such an impairment; or (C) [be] regarded as having such an impairment." 42 U.S.C. § 12102(2) (2006).

On appeal, Powers argues that he is disabled under both the first and third prongs—in other words, that he has both an actual physical limitation in the major life activity of working and that Holland has regarded him as having such an impairment. In addition to the major life activity of working, Powers also makes passing reference on appeal to the major life activities of "lifting, sitting, and/or bending." Appellant Brief at 28. But in opposing Holland's summary judgment motion before the district court, Powers merely argued that he was substantially limited in the major life activity of working. Therefore, any argument regarding these other activities is waived. *Fredricksen v. United Parcel Serv., Co.*, 581 F.3d 516, 521 (7th Cir. 2009). Moreover, even assuming Powers

had not waived the argument, the record is insufficient to show that Powers's back injury substantially limited his ability to lift, sit, or bend. The interpretive regulations define "substantially limits" as "[s]ignificantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which an average person in the general population can perform the same major life activity." 29 C.F.R. § 1630.2(j)(1)(ii). In this case, the record shows that Powers engaged in many activities requiring lifting, sitting and bending. Specifically, Powers testified that he didn't have any trouble lying flat or walking, that he could perform most household chores and bathe himself, and that he could sit comfortably in a chair for at least two hours. Powers also testified that he was presently employed as a warehouse foreman for his father's agricultural company where he had been performing work that was more physically demanding than the work he would be doing at Holland, and which included cleaning out bins, running equipment, and driving trucks. The evidence thus does not show that Powers was substantially more limited than the average person in lifting, sitting or bending. *See, e.g., Moore v. J.B. Hunt Transport, Inc.,* 221 F.3d 944, 951 (7th Cir. 2000) (holding that the plaintiff did not present sufficient evidence that arthritis substantially limited his ability to walk when compared with the general population based

on the plaintiff's testimony concerning his activities). Accordingly, our focus is solely on whether Powers is (or was viewed by Holland) as substantially limited in the major life activity of working.

### A. "Actually Disabled"

To be substantially limited in the major life activity of working means that a claimant is "significantly re-stricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities[3]." 29 C.F.R. § 1630.2(j)(3)(I). A class of jobs includes "the number and types of jobs utilizing similar training, knowledge, skills or abilities, within [the employee's] geographical area, . . . ." 29 C.F.R. § 1630.2(j)(3)(ii)(B). A broad range of jobs includes "the number and types of other jobs not utilizing similar training, knowledge, skills or abilities within that geographical area." 29 C.F.R. § 1630.2(j)(3)(ii)(C).

Powers contends that the specific limitations noted by Dr. Magill establish his inability to work as a truck driver and that this is a class of jobs, and that as such he is

---

[3] While this circuit and the EEOC have concluded that "working" is a major life activity, the Supreme Court has reserved judgment on that question. *See E.E.O.C. v. Schneider Nat., Inc.*, 481 F.3d 507, 511 (7th Cir. 2007) (citing *Sutton v. United Air Lines, Inc.,* 527 U.S. 471, 491 (1999)).

substantially limited in the major life activity of working.[4] In support of his position, Powers relies on *Best v. Shell Oil Co.*, 107 F.3d 544 (7th Cir. 1997). In *Best*, this court held that "truck driver" was a class of jobs and that the plaintiff presented sufficient evidence such that a "reasonable trier of fact could conclude that [the plaintiff's] bad knee substantially limited his ability to work as a truck driver." *Id.* at 548.

*Best*, though, is readily distinguishable from the case before us. In *Best*, the plaintiff's condition made it painful to bend his "knee more than 90 degrees inward toward his body," rendering him unable to drive most of the trucks in the defendant's fleet. *Id.* at 545. One of the defendant's own doctors concluded that the plaintiff "would have difficulty maintaining this position at this time" and should "consider *alternative work duties on a fulltime basis for the future*." *Id.* at 548. And a Driver Performance Evaluation of Best concluded that the plaintiff "was not safe and *should not be driving*." *Id.* Based on this evidence, the *Best* court concluded that "a reasonable trier of fact could find that Best's bad knee substantially limited his ability to work as a truck driver." *Id.*

Conversely, the evidence in this case is insufficient to show that Powers is unable to drive trucks. Powers's

---

[4]   Powers does not argue that he is limited in a broad range of jobs, nor would such an argument succeed given that Powers is working in another job which, as Powers himself testified, is more physically challenging than the work he would be doing at Holland.

restrictions—i.e., "limit hours of dock work" and "avoid dock plates as much as possible"—relate to dock work and not truck driving, and we have already held that "forklift operation" was not alone "broad enough to constitute a class of jobs." *Contreras v. Suncast Corp.*, 237 F.3d 756, 763 (7th Cir. 2001). Powers's third restriction, that the "tractor needs to be supplied with air seat, suspension, cab," is also insufficient to show that Powers would be barred from driving trucks because, as Powers testified in his deposition, the trucks Holland supplies already meet those requirements. This fact again contrasts sharply with *Best*, where the evidence was the opposite: the plaintiff in that case could not operate most of the trucks in the defendant's fleet, indicating that he would face the same difficulty with other employers. Finally, the fourth "restriction," rather than establishing a limitation on truck driving, established that Powers *is* able to operate trucks, stating "road driver work only."

Powers also did not present any evidence that his infirmities prevent him from other truck driving jobs or that most other truck driving jobs required dock work. In fact, the evidence is to the contrary: When asked in his deposition: "If you were able to find a job that was a line haul position only, kinda like the one you had back at Roadway, where you really didn't have to do any dock work, do you believe that you would be able to physically perform that job?" Powers answered "yes." Thus, the evidence cannot support the conclusion that Powers is unable to work in the class of jobs as a truck driver; at best, the evidence shows only that Powers would not be able to perform truck driving

jobs that require a significant amount of dock work.[5] However, "[i]t is now well-established that an inability to perform a particular job for a particular employer is not sufficient to establish a substantial limitation on the ability to work; rather, the impairment must substantially limit employment generally." *Homeyer v. Stanley Tulchin Assoc., Inc.,* 91 F.3d 959, 961 (7th Cir. 1996).

This case thus compares more closely with *Baulos v. Roadway Express, Inc.,* 139 F.3d 1147 (7th Cir. 1998). In *Baulos,* Baulos and Schneider sued Roadway Express claiming they were disabled because they were substantially limited in the major life activity of working and that Roadway failed to accommodate their disabilities in violation of the ADA. This court held that the plaintiffs were not disabled within the meaning of the ADA because their impairments only prevented them from performing a specific job for Roadway, labeled "sleeper duty" truck driving. A "sleeper duty" truck driver worked with a partner and while one person drove, the

---

[5]  In arguing that he is limited in the major life activity of working, Powers also relies on the deposition testimony provided by Dr. Ghanayem in Powers's worker's compensation case against Holland. Powers's reliance on Dr. Ghanayem's testimony, however, is misplaced. Dr. Ghanayem examined Powers in October 2004—more than a year *before* Powers received a medical release from Dr. Magill. Dr. Magill's more current release concludes that Powers can drive a truck, with the four restrictions noted above, and Powers cannot establish otherwise by relying on the older medical opinion provided by Dr. Ghanayem.

other would sleep for five to eight hours in an adjacent sleeper cab of the truck. *Id.* at 1149. Both plaintiffs suffered medical problems when working on sleeper duty (limited sleep disorder and related problems), which made them unsafe to drive. Both unsuccessfully sought reassignment to single-man trucks.[6] *Id.* at 1150. This court held that Baulos and Schneider were not disabled within the meaning of the ADA because their inability to drive sleeper trucks did not "disqualify them from a similar class of truck driving jobs that do not include sleeper duty." *Id.* at 1153. In reaching this conclusion, the *Baulos* court distinguished *Best*, noting that in *Best*, the plaintiff presented sufficient evidence from which a jury could find that the plaintiff would "face the same clutch and seat problems in many truck driving positions (class of jobs)." *Id.* at 1152. But "[u]nlike in *Best*, Roadway and the doctors that it relied on have not indicated that plaintiffs would experience the same disqualification in other truck driving positions." *Id.* Thus, in *Baulos* we concluded that the employer was entitled to summary judgment because the plaintiffs did not establish that they were substantially limited in the major life activity of working.

Accordingly, while *Best* makes clear that truck driving is a class of jobs, *Baulos* clarifies that to prevail on a claim that he is substantially impaired in the major life activity of working, a plaintiff must present evidence

---

[6] Because of the union's seniority scheme, Roadway could not exempt the plaintiffs from all sleeper duty. *Id.* at 1149-50.

that, if believed, would support the conclusion that he is unable to work as a truck driver in general. Merely being unable to work as a specific type of truck driver, or for a specific employer, is not enough. Our sister circuits agree and have likewise held that a plaintiff is not disabled merely because he cannot perform a specific truck-driving job. *See McLain v. Andersen Corp.*, 567 F.3d 956, 968 (8th Cir. 2009); *Collado v. United Parcel Serv., Co.*, 419 F.3d 1143, 1157 (11th Cir. 2005); *Wood v. Crown Redi-Mix, Inc.*, 339 F.3d 682, 686 (8th Cir. 2003); *EEOC v. J.B. Hunt Transp., Inc.*, 321 F.3d 69, 76-77 (2d Cir. 2003); *Black v. Roadway Express, Inc.*, 297 F.3d 445, 454 (6th Cir. 2002); *Duncan v. Washington Metropolitan Area Transit Authority*, 240 F.3d 1110, 1115 (D.C. Cir. 2001); *Marinelli v. City of Erie, PA*, 216 F.3d 354, 366 (3d Cir. 2000).

Here, at best Powers has shown only that he cannot work as a truck driver in positions requiring significant dock work. In fact, the evidence was that Powers worked as a long-haul driver for two years without any problems and that his problems arose only after he transferred to city driver work. In short, there is no evidence in the record that Powers's impairment prevents him from working as a truck driver in general. And it is Powers's burden to present such evidence. *DePaoli v. Abbott Lab.*, 140 F.3d 668, 672 (7th Cir. 1998). Accordingly, based on this record, we cannot conclude that Powers is actually impaired in the major life activity of working.

*B. "Regarded As" Disabled*

Alternatively, Powers maintains that even if he does not have an actual substantial impairment in the major life activity of working, Holland regarded him as having such an impairment. Under the "regarded as" prong, the employer must believe, rightly or wrongly, that the employee has an impairment that substantially limits one or more major life activities. *Kupstas v. City of Green-wood*, 398 F.3d 609, 612 (7th Cir. 2005). Under the "regarded as" theory of disability, then, Powers must show that Holland believed he was substantially limited in his ability to perform the major life activity of working.[7]

---

[7] Congress changed these standards when it enacted the ADA Amendments Act of 2008 ("ADAAA"). Under the ADAAA, a person may be "regarded as" disabled "because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102(3). The amendments, however, did not take effect until January 1, 2009, so we apply the law in effect at the time of the alleged violations. *Fredricksen*, 581 F.3d at 521 n.1. Moreover, even if the ADAAA did govern, Powers's claim would still be doomed because the ADAAA clarified that an individual "regarded as" disabled (as opposed to actually disabled) is not entitled to a "reasonable accommodation." 42 U.S.C. 12201(h). (This court had left that question open under the ADA. *See Cigan v. Chippewa Falls School Dist.*, 388 F.3d 331, 335 (7th Cir. 2004).) And Powers's ADA claims all presume that Holland would be required to accommodate him in some way, i.e., by transferring him to a different job or limiting the amount of dock work he must perform.

(continued...)

*Id.* And to be regarded as substantially limited in the ability to work, Powers needed to present some evidence that Holland "regarded him as limited in his ability to perform not merely one particular job but a class or broad range of jobs." *Miller*, 643 F.3d at 195. But there is no such evidence in the record; rather, the evidence merely shows that Holland would not allow Powers to return to work as a city driver, either based on his ambiguous work restrictions *or* because Holland required Powers to be released without restrictions, i.e., its 100% healed policy.[8]

Powers responds that Holland's 100% healed policy itself establishes that it regarded Powers as disabled.[9] In

---

[7]  (...continued)

Therefore Powers would fare no better under the ADAAA.

[8]   Holland claims that it did not have a 100% healed policy, but as noted above, there was evidence that VandeVusse told Dr. Bergin that Powers would not be returned to work until he was released without restrictions. And Kurt Kopczynski, the South Bend Terminal Manager, also relayed this information to Powers, telling him he would not be able to return to work with restrictions. Additionally, Neil London, Holland's Labor Relations Manager, testified in his deposition that Holland's policy was that you "cannot return to work from an on-the-job injury without full release to return to work." Thus, as the district court concluded, Powers presented sufficient evidence that Holland applied a 100% healed policy.

[9]   In arguing that Holland regarded him as disabled, Powers also relies on the deposition testimony provided by Dr.

(continued...)

support of his position, Powers cites decisions from other circuits which have held that a "100% healed" policy could be sufficient to establish that an employer "regarded" the plaintiff as substantially limited in the major life activity of working. *See, e.g., Jones v. UPS, Inc.*, 502 F.3d 1176, 1188-89 (10th Cir. 2007); *Johnson v. Paradise Valley Unified Sch. Dist.*, 251 F.3d 1222, 1226 (9th Cir. 2001); *Henderson*, 247 F.3d at 653. This circuit has yet to specifically address that question, but these holdings seem inconsistent with the Supreme Court's conclusion that "an employer is free to decide that physical characteristics or medical conditions that do not rise to the level of an impairment—such as one's height, build, or singing voice—are preferable to others, just as it is free to decide that some limiting, but not substantially limiting, impairments make individuals less than ideally suited for a job." *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 490-91 (1999). In other words, a particular impairment may disqualify a person for a specific job that the employer needs to fill. Without some evidence that the employer

---

[9] (...continued)

Ghanayem in Powers's worker's compensation case against Holland. But as noted above, Dr. Ghanayem examined Powers more than a year before Powers showed up at Holland's terminal with a medical release from Dr. Magill. Additionally, there is no evidence that the decision-makers in this case knew anything about Dr. Ghanayem's deposition testimony. Therefore, Dr. Ghanayem's opinion cannot create a reasonable inference that Holland regarded Powers as substantially limited in the major life activity of working.

actually viewed the impaired (but not disabled) individual as unable to work for other employers in a class of jobs or a broad range of jobs, a 100% healed policy merely shows that *this* employer's preference is to hire someone without any impairments. Under the ADA that would not be a violation unless the individual is actually disabled. *Id. See also Christian*, 117 F.3d at 1053 ("The Act is not a general protection of medically afflicted persons. . . . [I]f the employer discriminates against them on account of their being (or being believed by him to be) ill, even permanently ill, but not disabled, there is no violation.").

From a business perspective, a 100% healed policy would likely be a disadvantage economically because an employer would be losing someone who might be the best person for the job. Also, if the impairment were such that the employee is actually disabled, then the employer might be subject to *per se* liability under the ADA. *See Hendricks-Robinson v. Excel Corp.*, 154 F.3d 685, 698 (7th Cir. 1998); *McGregor v. Nat'l R.R. Passenger Corp.*, 187 F.3d 1113, 1116 (9th Cir. 1999); *Henderson*, 247 F.3d at 653. (The risk of such a policy is even greater (if not absolute) now that the ADAAA has changed the definition of "regarded as" disabled.) On the other hand, an employer in the trucking industry might decide that *it* does not want to risk one of its drivers causing an injury and creating tort liability. This later reasoning is consistent with Holland's Labor Relations Manager's testimony that it has adopted this 100% healed policy because "they are in a safety sensitive industry." We said in *E.E.O.C. v. Schneider Nat., Inc.*, 481 F.3d 507 (7th Cir. 2007), that there is nothing

illegal about being more risk-averse than others in the industry and that the defendant "is entitled to determine how much risk is too great for *it* to be willing to take." *Id.* at 510. In that case, the employer would not allow a truck driver with neurocardiogenic syncope to return to work and the employee claimed an actual or perceived disability in the major life activity of working. *Id.* We reasoned that the impairment did not substantially limit the plaintiff in the major life activity of working and that the evidence was insufficient to show that Schneider regarded the plaintiff as limited in the major life activity of working. We reasoned that "there [was] no evidence that Schneider considers neurocardiogenic syncope to impair any 'life activity' other than driving a truck for Schneider, and perhaps for some other truck companies (we do not know whether there are any) that like Schneider have safety standards higher than the minimum required by the federal government." *Id.* at 511. We concluded "that is too esoteric a capability to be judged a 'major' life activity." *Id.* Similarly, in this case, there is no evidence that Holland considered Powers's impairments as affecting any life activity other than working as a city driver for Holland. Under *Schneider*, that is not enough.

Regarding Holland's 100% healed policy, in addition to the Supreme Court's reasoning in *Sutton* and this court's precedent in *Schneider* and *Baulos*, we find the Tenth Circuit's reasoning in *Dillon v. Mountain Coal Co., LLC*, 569 F.3d 1215 (10th Cir. 2009), more consistent with the facts of this case. In *Dillon*, the employer had a 100% healed (no restrictions) policy and its application prevented the plaintiff from returning to work in the defendant's coal

mine. *Id.* at 1219. The plaintiff argued that the employer thus regarded him as disabled in the major life activity of working, either in a "class of jobs" (mining jobs) or in a "broad range of jobs." *Id.* at 1220. The Tenth Circuit rejected this argument because the plaintiff had not presented any evidence concerning "the number and types of jobs utilizing similar training, knowledge, skill or abilities" in the geographic area, as the EEOC regulations require. *Id.* Without such evidence, the court reasoned that "[t]he policy, however, only speaks to whether Mountain Coal regarded [the plaintiff] as substantially limited in his ability to work at West Elk Mine." *Id.* The court then concluded that "while a jury could infer that Mountain Coal considered [the plaintiff] as substantially limited in his ability to work at West Elk Mine, there was no evidence that Mountain Coal regarded him as substantially limited in his ability to work outside of West Elk Mine, or that the jobs within the mine could properly be characterized as a 'class of jobs' or a 'broad range of jobs.'" *Id.*

Similarly, in this case, Powers has not presented any evidence that Holland viewed him as limited in his ability to work for an employer other than Holland, nor has Powers shown that the jobs at Holland constituted a "class of jobs" or a "broad range of jobs." While truck driving in general is a broad class of jobs, the two truck driving jobs at Holland, especially city driving, require dock work. This condition significantly narrows the type of truck driving needed, compared to the general classification of truck driving. *Cf. Baulos*, 139 F.3d at 1152-53. Or at least based on this record, we cannot conclude that Holland's two truck-driving positions constitute a class of jobs: Like *Dillon*, the

record is devoid of any evidence addressing the number of truck driving jobs available (or unavailable) to Powers. At best then, Holland's 100% healed policy, like the policy in *Dillon*, only shows that Holland regarded Powers as substantially limited in his ability to work as a truck driver for Holland. That is not enough for Powers to qualify as disabled under the "regarded as" prong of the ADA.

In sum, it was Powers's burden to come forward with evidence that could satisfy his ultimate burden of showing an ADA-recognized disability. *DePaoli*, 140 F.3d at 672. Powers has not done so, though, and without evidence that he is disabled, as defined by the ADA, Powers cannot succeed on a disparate treatment, *per se* discrimination, or reasonable accommodation claim. Accordingly, Holland is entitled to summary judgment on all of Powers's ADA claims.[10]

---

[10] Powers is still on leave from Holland and, as Holland's attorney confirmed at oral argument, Powers could still submit a doctor's report and seek to return to work—Holland just needs clarification on his limitations. Powers intimates that he never attempted to have a doctor clarify his restrictions because it would be futile, since Holland told him that he needed to be released without restrictions, i.e., 100% healed. During this litigation, though, Holland maintained that it does not apply a 100% healed policy, and under the ADAAA, which would now apply, it would be risky for Holland to apply such a policy. And a reverse course by Holland now might also be evidence of retaliation or pretext. Thus, should Powers truly wish to return to work, he need only obtain the clarification Holland requested.

### III.

Powers did not present sufficient evidence of an impairment that substantially limited his ability to perform the major life activity of working, nor did he present evidence from which a jury could reasonably conclude that Holland perceived him as having such an impairment. Rather, at best, the evidence shows that Powers's infirmities prevented him from performing one specific job for Holland—city driver. That is insufficient to qualify as disabled under the ADA. Because Powers is not disabled within the meaning of the ADA, his discrimination, *per se* discrimination, and reasonable accommodation claims fail and Holland is entitled to summary judgment. We AFFIRM.