In the

# United States Court of Appeals

## For the Seventh Circuit

Nos. 13-3079, 14-1041

WILLIAM N. GERHARTZ,

*Plaintiff-Appellant,*

*v.*

DAVID RICHERT and
BILL TYSON,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 2:12-cv-00731-RTR — **Rudolph T. Randa**, *Judge.*

ARGUED OCTOBER 1, 2014 — DECIDED MARCH 5, 2015

Before WOOD, *Chief Judge,* and RIPPLE and TINDER, *Circuit Judges.*

RIPPLE, *Circuit Judge.* William Gerhartz brought this action under 42 U.S.C. § 1983 against Deputy David Richert and Sergeant Bill Tyson, two officers of the Calumet County Sheriff's Department. He alleged that the officers had violated his Fourth Amendment rights by ordering that his blood be drawn, for evidentiary purposes, without a warrant. The

district court granted summary judgment for the officers. It determined that the natural dissipation of alcohol from Mr. Gerhartz's bloodstream was an exigent circumstance sufficient to justify the officers' warrantless blood draw. Mr. Gerhartz later filed a Rule 59(e) motion to alter and amend the judgment, which the district court denied. Mr. Gerhartz now appeals both the district court's grant of summary judgment as well as its denial of his Rule 59(e) motion. For the reasons set forth in the following opinion, we affirm the judgment of the district court.

## I

## BACKGROUND

### A.

On the night of February 16, 2006, Mr. Gerhartz was driving south on a rural highway toward Stockbridge, Wisconsin, when he lost control of his vehicle and struck an oncoming car. Four officers from the Calumet County Sheriff's Department were dispatched to the scene. Deputy Richert was the first to arrive. He spoke to Paramedic Kent J. Katalinick who had been treating Mr. Gerhartz. Katalinick advised the Deputy that he believed Mr. Gerhartz had been drinking alcohol.

Sergeant Tyson was the last officer to arrive at the scene. After making contact with his fellow officers, he instructed Deputy Richert to follow Mr. Gerhartz to the hospital and to continue his investigation there; Deputy Richert did so. After Mr. Gerhartz's ambulance left, Sergeant Tyson spoke to Aimee Zeinert, a member of the first responder team and, coincidentally, a bartender for a nearby Stockbridge bar.

Zeinert informed Sergeant Tyson that, earlier that evening, she had served Mr. Gerhartz "three or possibly four glasses of Bud Light beer."[1] Zeinert also stated that Mr. Gerhartz told her that he had smoked "too much pot tonight."[2] Sergeant Tyson relayed this information to Deputy Richert, who was still en route to the hospital. Sergeant Tyson also instructed Deputy Richert to arrest Mr. Gerhartz for driving under the influence and to obtain a blood sample from Mr. Gerhartz, either voluntarily or by force.

Upon arriving at the hospital, another sheriff's deputy told Deputy Richert that Paramedic Katalinick again had reported smelling alcohol on Mr. Gerhartz. Based on this information, Deputy Richert ordered, without a warrant, an evidentiary blood draw on Mr. Gerhartz pursuant to Wisconsin's implied consent law.[3] A laboratory technician con-

---

[1] R.40-1 at 10.

[2] *Id.*; R.35-9 at 2.

[3] Wisconsin's implied consent law provides that, under certain specified circumstances, any person who drives or operates a motor vehicle on a public highway in the state

> is deemed to have given consent to one or more tests of his or her breath, blood or urine, for the purpose of determining the presence or quantity in his or her blood or breath, of alcohol, controlled substances, controlled substance analogs or other drugs, when requested to do so by a law enforcement officer[.]

Wis. Stat. § 343.305(2). Although the parties each mention this statute in their briefs, neither party asserts that it is relevant to our analysis on appeal. Accordingly, we do not consider it when evaluating Mr. Gerhartz's claim.

ducted the blood draw at 11:33 p.m., a little over two hours after the accident. Mr. Gerhartz was unconscious at the time. Test results later showed that his blood-alcohol content was .243g/100ml.[4]

As a result of the accident, Mr. Gerhartz was later charged and convicted in a Wisconsin court on one count of injury by intoxicated use of a motor vehicle and one count of operating a motor vehicle under the influence.

## B.

Mr. Gerhartz brought this action pro se under 42 U.S.C. § 1983 against Deputy Richert and Sergeant Tyson, alleging that they had violated his Fourth and Fourteenth Amendment rights by ordering that his blood be drawn, for evidentiary purposes, without either his consent or probable cause. The officers moved for summary judgment. In their motion, they contended, among other things, that exigent circumstances justified their decision to order the warrantless blood draw and that, in any event, they were entitled to qualified immunity.

The district court granted the officers' motion for summary judgment. It first dismissed Mr. Gerhartz's Fourteenth Amendment claim, concluding that his allegations were most appropriately analyzed under the more specific Fourth Amendment. Under that provision, the court determined

---

[4] In Wisconsin, it is illegal to drive or operate a motor vehicle with a blood-alcohol concentration of .08g/100ml or more. *See* Wis. Stat. §§ 340.01(46m)(a), 346.63(1)(b).

that the natural dissipation of alcohol from Mr. Gerhartz's bloodstream was an exigent circumstance sufficient to justify the officers' warrantless blood draw. The court did not address the second prong of the officers' qualified immunity defense.[5]

Notably, the district court's grant of summary judgment came approximately four months after the Supreme Court's decision in *Missouri v. McNeely*, 133 S. Ct. 1552 (2013), which held that the natural dissipation of alcohol from a person's bloodstream, without more, does not constitute a per se exigency sufficient to justify a warrantless blood draw. *See id.* at 1563.

Mr. Gerhartz subsequently filed a Rule 59(e) motion, asking the district court to alter and amend its judgment in light of *McNeely*. In particular, he submitted that, under *McNeely*, the district court erred in finding that exigent circumstances were present to justify a warrantless search. After initially noting that "Rule 59(e) motions are generally not vehicles to introduce new evidence or advance arguments that could or should have been presented to the district court prior to judgment," the court ultimately concluded that, despite *McNeely*, exigent circumstances did, in fact, exist because "Officer Richert might reasonably have believed that he was confronted with an emergency situation in which the delay necessary to obtain a warrant threatened the destruction of

---

[5] *See Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (noting that qualified immunity entails a two-prong inquiry, the first, whether the facts as alleged by the plaintiff "make out a violation of a constitutional right," and the second, "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct").

evidence."[6] Accordingly, the court denied Mr. Gerhartz's request to alter or amend the judgment.

Mr. Gerhartz, now assisted by counsel, appeals both the district court's grant of summary judgment as well as its denial of his Rule 59(e) motion as to his Fourth Amendment claim.

## II

## DISCUSSION

We review a district court's grant of summary judgment de novo, viewing the evidence in the light most favorable to the nonmoving party. *Powers v. USF Holland, Inc.*, 667 F.3d 815, 819 (7th Cir. 2011). Summary judgment is appropriate where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Our review is not limited to the district court's reasons for awarding summary judgment; instead, "we may affirm a grant of summary judgment on any alternative basis found in the record as long as that basis was adequately considered by the district court and the nonmoving party had an opportunity to contest it." *Best v. City of Portland*, 554 F.3d 698, 702 (7th Cir. 2009).

## A.

As a threshold argument, the defendants submit that Mr. Gerhartz has waived the issue of whether exigent cir-

---

[6] R.71 at 3, 5.

cumstances justified the blood draw. We do not consider it appropriate to rest our decision on the ground of waiver. As the matter comes to us, Mr. Gerhartz had filed a complaint in the district court in which he maintained that the defendants had procured a blood sample without probable cause. In moving for summary judgment, the defendants not only maintained that there was probable cause but that they were excused from having to demonstrate that probable cause before a judicial officer because of exigent circumstances. In particular, the defendants asserted that "exigent circumstances existed because of the nature of the dissipation of alcohol from a person's bloodstream."[7] Mr. Gerhartz, proceeding pro se, did not address this argument in his response, instead asserting that the defendants lacked probable cause.

Mr. Gerhartz's failure to respond to the defendants' exigency argument amounted to, at most, an admission to the facts on which the defendants' claim of exigent circumstances was based. *See Flynn v. Sandahl*, 58 F.3d 283, 288 (7th Cir. 1995). "[I]t [did] not constitute a waiver by [Mr. Gerhartz] of all legal arguments based upon those undisputed facts." *Id.* As the moving party, the defendants still "ha[d] the burden to show that [they were] entitled to judgment under established principles." *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 161 (1970) (internal quotation marks omitted); *accord Keeton v. Morningstar, Inc.*, 667 F.3d 877, 884 (7th Cir. 2012). A moving party who fails to discharge this burden is not entitled to summary judgment, even if the nonmovant entirely fails to

---

[7] R.55 at 8.

respond.[8] Thus, even though Mr. Gerhartz failed to address the defendants' exigency argument, "the court still [had to] ascertain that judgment [was] proper as a matter of governing law." *Johnson v. Gudmundsson*, 35 F.3d 1104, 1112 (7th Cir. 1994) (internal quotation marks omitted).

Applying these principles, we do not believe that Mr. Gerhartz waived his right to contest the district court's finding of exigent circumstances. Here, the defendants' summary judgment motion was premised on the same per se exigency theory, rejected by the Supreme Court in *McNeely*. The district court accepted this theory in awarding summary judgment. As the nonmovant, Mr. Gerhartz was under no obligation to point out the obvious legal error in the defendants' exigency argument. *See Flynn*, 58 F.3d at 288;

---

[8] *See Johnson v. Gudmundsson*, 35 F.3d 1104, 1112 (7th Cir. 1994) ("Even if the opposing party completely fails to respond to a summary judgment motion, Rule 56(e) permits judgment for the moving party only *if appropriate*—that is, if the motion demonstrates that there is no genuine issue of material fact *and* that the movant is entitled to judgment as a matter of law." (emphasis in original) (internal quotation marks omitted)); *see also Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 161 (1970) ("No defense to an insufficient showing is required." (internal quotation marks omitted)); *Big O Tire Dealers, Inc. v. Big O Warehouse*, 741 F.2d 160, 163 (7th Cir. 1984) ("Where the moving party fails to meet its strict burden of proof, summary judgment cannot be entered even if the opposing party fails to respond to the motion."); *Yorger v. Pittsburgh Corning Corp.*, 733 F.2d 1215, 1223 (7th Cir. 1984) ("[I]t would be a distortion of justice for a moving party to prevail on appellate review of a summary judgment in favor of the movant on the ground that, notwithstanding the movant's failure to satisfy its burden of showing the non-existence of genuine issues of material fact, the non-movant did not in the court below dissect the movant's incorrect affirmative defense.").

*Johnson*, 35 F.3d at 1112; *Glass v. Dachel*, 2 F.3d 733, 739 (7th Cir. 1993); *Tobey v. Extel/JWP, Inc.*, 985 F.2d 330, 332 (7th Cir. 1993); *Yorger v. Pittsburgh Corning Corp.*, 733 F.2d 1215, 1223 (7th Cir. 1984). Thus, to the extent that Mr. Gerhartz challenges the district court's award of summary judgment based on the court's application of this erroneous legal standard, we do not believe that this challenge was waived.

In any event, the district court's decision to address the merits of Mr. Gerhartz's exigency argument on a post-verdict motion preserved the issue for appeal. Although an issue presented for the first time in a Rule 59(e) motion generally is not timely raised, "such an issue is subject to appellate review if the district court exercises its discretion to consider the issue on the merits." *Dyson v. District of Columbia*, 710 F.3d 415, 419 (D.C. Cir. 2013); *accord Int'l Prod. Specialists, Inc. v. Schwing Am., Inc.*, 580 F.3d 587, 600 (7th Cir. 2009) ("[A]n issue first presented to the district court in a post-trial brief is properly raised below when the district court exercises its discretion to consider the issue." (internal quotation marks omitted)); *Armstead v. Frank*, 383 F.3d 630, 633 (7th Cir. 2004) (recognizing that "[a]n issue presented for the first time in a [Rule 59(e)] motion…is not preserved for appellate review unless the district court exercises its discretion to excuse the party's lack of timeliness and consider[s] the issue" (third alteration in original) (internal quotation marks omitted)).[9] Here, following the entry of judgment, Mr. Gerhartz

---

[9] *See also Fortress Bible Church v. Feiner*, 694 F.3d 208, 216 n.3 (2d Cir. 2012) (noting that an argument first raised in a post-trial brief and considered by the district court is properly considered on appeal); *Kleinsmith v. Shurtleff*, 571 F.3d 1033, 1038–39 (10th Cir. 2009) (noting that an argument first raised in a motion for reconsideration is preserved for appeal so

(…continued)

filed a Rule 59(e) motion challenging the district court's order as inconsistent with the Supreme Court's decision in *McNeely*. Rather than treating this issue as waived, the district court addressed Mr. Gerhartz's argument on the merits. The issue, therefore, is preserved for appellate review.

## B.

We turn now to the merits of Mr. Gerhartz's Fourth Amendment claim. The Supreme Court first addressed the issue of warrantless blood draws in *Schmerber v. California*, 384 U.S. 757 (1966). In *Schmerber*, the Court determined that probable cause alone could justify a blood draw so long as the officer ordering the test "might reasonably have believed that he was confronted with an emergency, in which the delay necessary to obtain a warrant, under the circumstances,

---

(…continued)

long as the district court "exercise[s] its discretion to address that challenge"); *Holland v. Big River Minerals Corp.*, 181 F.3d 597, 605 (4th Cir. 1999) ("[A]n issue presented for the first time in a motion pursuant to Federal Rule of Civil Procedure 59(e) generally is not timely raised; accordingly, such an issue is not preserved for appellate review unless the district court exercises its discretion to excuse the party's lack of timeliness and consider the issue."); *Quest Med., Inc. v. Apprill*, 90 F.3d 1080, 1087 (5th Cir. 1996) ("A district court has discretion to consider new theories raised for the first time in a post-trial brief, and an issue first presented to the district court in a post-trial brief is properly raised below when the district court exercises its discretion to consider the issue." (citations omitted)).

threatened the destruction of evidence." *Id.* at 770 (internal quotation marks omitted). Such destruction, the Court explained, was a likely consequence of the natural dissipation of alcohol from the blood:

> We are told that the percentage of alcohol in the blood begins to diminish shortly after drinking stops, as the body functions to eliminate it from the system. Particularly in a case such as this, where time had to be taken to bring the accused to a hospital and to investigate the scene of the accident, there was no time to seek out a magistrate and secure a warrant. Given these special facts, we conclude that the attempt to secure evidence of blood-alcohol content in this case was an appropriate incident to petitioner's arrest.

*Id.* at 770–71.

Following *Schmerber*, several courts read the Supreme Court's decision as endorsing a per se exigency rule in blood-alcohol cases—that is, that the natural dissipation of alcohol from the blood constitutes a per se exigency. *See McNeely*, 133 S. Ct. at 1558 n.2 (collecting cases). Notably, the Supreme Court of Wisconsin was among those that took this view, declaring in *State v. Bohling*, 494 N.W.2d 399 (Wis. 1993), that the exigency identified in *Schmerber* "was caused solely by the fact that the amount of alcohol in a person's blood stream diminishes over time." *Id.* at 402.

The Supreme Court rejected this understanding of *Schmerber* in *McNeely*. In *McNeely*, the Court clarified that, "while the natural dissipation of alcohol in the blood may

support a finding of exigency in a specific case, as it did in *Schmerber*, it does not do so categorically." 133 S. Ct. at 1563. Thus, the Court explained, "[w]hether a warrantless blood test of a drunk-driving suspect is reasonable must be determined case by case based on the totality of the circumstances." *Id.*

Mr. Gerhartz contends that the district court awarded summary judgment based on the same per se exigency theory rejected in *McNeely* and that, under *McNeely*, summary judgment was improper because there existed a genuine dispute as to whether exigent circumstances were present. In response, Deputy Richert and Sergeant Tyson contend, as they did before the district court, that their decision to order a blood draw on Mr. Gerhartz was lawful and that, in any event, they are entitled to qualified immunity.

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation marks omitted). Accordingly, in order to defeat a properly raised qualified immunity defense, the plaintiff must establish two things: "first, that the facts alleged describe a violation of a protected right; and second, that this right was clearly established at the time of the defendant's alleged misconduct." *Mordi v. Zeigler*, 770 F.3d 1161, 1164 (7th Cir. 2014). We have the discretion to decide which of these two prongs to address first. *See Pearson*, 555 U.S. at 236.

Here, because of the undeveloped nature of the factual record, we start (and end) our analysis with the clearly-established prong. During the parties' briefing of this case,

we decided a similar issue. In *Seiser v. City of Chicago*, 762 F.3d 647 (7th Cir. 2014), we held that, prior to the Supreme Court's decision in *McNeely*, the law was not clearly established on the issue of whether the natural dissipation of alcohol from the bloodstream constitutes a per se exigency. *See id.* at 658. In arriving at this conclusion, we noted that, prior to *McNeely*, courts were split over this issue and that many jurisdictions—like Illinois, where the search in *Seiser* took place—had adopted a per se exigency rule in blood-alcohol cases. *See id.* at 657–58. Given these circumstances, the court determined that a reasonable officer in the defendant's position "would have believed…that so long as there was probable cause to justify a breathalyzer examination, there was no need to consider seeking a warrant first." *Id.* at 658.

*Seiser* was decided sixteen days before Mr. Gerhartz filed his reply brief. In that brief, Mr. Gerhartz attempts to distinguish *Seiser* by arguing that its holding was limited to breathalyzer tests. In particular, he submits that since a blood draw is more intrusive than a breathalyzer test a reasonable officer would not have believed that probable cause alone was sufficient to justify a warrantless blood draw.

Although the intrusiveness of a search is certainly relevant to its reasonableness under the Fourth Amendment, Mr. Gerhartz has not identified any clearly established authority that would have put the defendants on notice that their decision to order a warrantless blood draw (as opposed a breathalyzer test) was unlawful. Nor could he. At the time *McNeely* was decided, the law regarding exigent circumstances in blood-alcohol cases was just as unclear with regard to blood draws as breathalyzer tests. Indeed, both *McNeely* and *Schmerber* concerned warrantless blood draws

rather than breathalyzer tests. *See McNeely*, 133 S. Ct. at 1557; *Schmerber*, 384 U.S. at 758. Our reasoning in *Seiser* drew no distinction between the two. *See* 762 F.3d at 656–59. Accordingly, we cannot distinguish *Seiser* on these grounds.

Rather, we conclude that *Seiser* is controlling in this case. Here, the search at issue took place in Wisconsin on February 16, 2006. At this time, approximately seven years before *McNeely*, Wisconsin case law recognized a per se exigency rule in blood-alcohol cases. *See Bohling*, 494 N.W.2d at 402.[10] Thus, Deputy Richert and Sergeant Tyson faced the same lack of clearly established law that confronted the defendants in *Seiser*. As such, they are entitled to qualified immunity.

## Conclusion

Having decided that Deputy Richert and Sergeant Tyson's conduct did not contravene any clearly established law, we need not decide whether their actions in fact violated Mr. Gerhartz's Fourth Amendment rights. Because the defendants are entitled to qualified immunity, the judgment of the district court is affirmed.

---

[10] In highlighting the defendants' reasonable reliance on *State v. Bohling*, 494 N.W.2d 399 (Wis. 1993), we do not mean to suggest that a state supreme court decision always will prove sufficient to demonstrate the absence of clearly established law. Crucially, at the time of the defendants' actions in this case, neither this court nor the Supreme Court had addressed whether *Schmerber v. California*, 384 U.S. 757 (1966), created a per se exigency rule in blood-alcohol cases.