In the

# United States Court of Appeals

### For the Seventh Circuit

No. 11-2664

CRAIG STEFFEN,

*Plaintiff-Appellant,*

*v.*

PATRICK R. DONAHOE,
Postmaster General, et al.,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 09-C-120—**Aaron E. Goodstein**, *Magistrate Judge.*

ARGUED FEBRUARY 15, 2012—DECIDED MARCH 21, 2012

Before POSNER, FLAUM, and MANION, *Circuit Judges.*

FLAUM, *Circuit Judge.* Craig Steffen was a part-time employee of the United States Postal Service ("USPS") from 1987 to 2006. Due to a back injury, however, Steffen worked only one week in the last three years of his tenure with the USPS. The USPS claims that Steffen did not properly apply for leave during those three years, nor did he submit the proper paperwork to substantiate that he

was, in fact, injured. Nonetheless, the USPS agreed to allow him to return to his job, provided that he did not have any restrictions on his ability to work. In the event that he was limited in his capacity to perform his job, USPS agreed that he could file for disability retirement.

Upon evaluation, Steffen's physician placed restrictions on his work activity. Steffen did not file for disability retirement. The USPS, therefore, fired him.

Steffen claims that his termination constitutes disability discrimination under the Rehabilitation Act of 1973 (the "Rehab Act") and the Americans with Disabilities Act (the "ADA"). Defendants—the Postmaster General and the USPS—filed a motion for summary judgment, arguing that Steffen is not "disabled" under the Rehab Act and the ADA, and, thus, has no claim under those statutes. The district court agreed with the defendants and dismissed Steffen's claim. We affirm the judgment of the district court.

## I.  Background

### A.  Factual Background

Craig Steffen was a part-time mail handler for the USPS in Milwaukee from 1987 until his termination in 2006. For the last three of those years, however, he did not actually work. In 1998, Steffen suffered an injury to his back while on the job. He took two weeks off to recover, ultimately returning to "light-duty" work until May 2003. At that time, Steffen reinjured himself at work. Except for

one week in July 2003, he did not return to work for the USPS at any point leading up to his termination on January 10, 2006.

During the two-and-a-half years that Steffen was not working, his supervisor, Charles Spahn, repeatedly attempted to get him either to return to work or to produce documentation regarding his injury. Spahn contacted Steffen's union, but his efforts were unsuccessful. In January 2005, Spahn wrote Steffen a letter stating that he would be fired on February 11, 2005 for being absent without leave, for failing to maintain a regular schedule, and for failing to follow instructions regarding any possible leave for which he was eligible. Steffen responded by contacting his union, which filed a grievance on his behalf. In October 2005, Steffen entered a pre-arbitration settlement agreement (the "Settlement Agreement") with the USPS. The Settlement Agreement included the following language:

> Grievant will be returned to duty provided he successfully meets all medical requirements for his position. Grievant has a scheduled appointment the first week in November 2005 with his physician. Grievant must contact the Milwaukee Postal Medical Unit for a FFD if it is determined by his physican that he may return to full duty. He must make contact with the Postal Medical Unit by November 11, 2005, for a FFD. He must cooperate with all recommendations by the Postal Medical Unit.

> The parties agree that Craig Steffen will apply for disability retirement if he is unable to return to full

duty after his determination from his physician in November. He must submit his application for disability retirement within 30 days of his physician's findings. If he fails to apply for disability retirement within the 30 days or if the disability retirement is disapproved he must resign from the Postal Service within 15 days of the determination.

Steffen's union representative did not explain the Settlement Agreement to him. As he understood the Settlement Agreement, the term "full duty" meant that he was to return to the light-duty job that he performed from 1998 through 2003. Emma Hughes, the USPS representative involved in the Settlement Agreement, intended the term "full duty" to mean that Steffen could not return to work with any restrictions on his performance or requiring accommodations.

In keeping with the Settlement Agreement, Steffen visited his physician, as well as a second physician in December 2005. His physicians cleared him to return to work, but imposed several permanent restrictions on his abilities. The first physician told Steffen to avoid lifting, pushing, and pulling more than 25 pounds; standing for more than two hours at a time; and repetitively bending, stooping, climbing, reaching, and twisting. He also encouraged Steffen to alternate between sitting and standing. The second physician agreed. In response to these restrictions, the USPS physician determined that Steffen was unfit for "full duty," interpreting "full duty" to mean no restrictions. Steffen did not file for disability retirement, nor did he resign. He was terminated on

January 10, 2006, based on his violation of the Settlement Agreement.

## B. Procedural Background

Steffen filed a grievance in arbitration against the USPS, claiming discrimination based on disability. His claim was dismissed when the arbitrator determined that the matter was not subject to arbitration. Steffen then filed a complaint with the Equal Employment Opportunity Commission (the "EEOC"). After a three-year investigation, the EEOC found that no discrimination took place when Steffen was fired. Finally, Steffen filed a disability discrimination suit pro se in federal court on February 5, 2009. He eventually obtained counsel.

Steffen filed a Complaint, followed by an Amended Complaint, followed by a Second Amended Complaint. The defendants did not contest the filing of the Second Amended Complaint on the condition that Steffen stipulated to the fact that he was not legally disabled. This stipulation limited him to the claim that he was discriminated against because he was "regarded as" disabled by the USPS. Steffen obliged. Steffen argued that the USPS regarded him as being disabled and fired him based on this perceived disability, in violation of the Rehab Act.[1] He requested both damages and reinstatement.

---

[1] Because the USPS is an agency of the federal government and not a private employer, Steffen's claims are brought under

(continued...)

After discovery, the defendants moved for summary judgment, and Steffen moved for partial summary judgment. Steffen argued that the USPS' entrance into the Settlement Agreement constituted a per se violation of the Rehab Act since it had a "100% healed" clause. In response, the defendants maintained that they did not regard Steffen as being disabled, but also argued that even if Steffen established a prima facie case of discrimination, they had a non-discriminatory reason to fire him. Specifically, the defendants argued that they fired Steffen due to his attendance record and failure to comply with the Settlement Agreement.

The district court granted the defendants' motion for summary judgment. First, it held that the Congress' amendments to the ADA that took effect in 2009 (the "Amendments") did not apply to Steffen's claim as he contended. Steffen was fired before the Amendments were passed, and, the district court ruled, the Amendments are not retroactive. Prior to the Amendments, an employee was "regarded as" having a disability if his employer believed that he had an impairment that "substantially limit[ed] one or more major life activities." 45

---

[1] (...continued)

the Rehab Act, PL 93-112, 87 Stat. 355, and not the ADA. This Court, however, "looks to the standards applied under the . . . ADA to determine whether a violation of the Rehab Act occurs in the employment context." *Peters v. City of Mauston*, 311 F.3d 835, 842 (7th Cir. 2002) (internal citations omitted); 29 U.S.C. § 794(d). Thus, we refer to the Rehab Act and the ADA interchangeably.

C.F.R. § 84.3 (2001). After the Amendments took effect, an employee could be "regarded as" having a disability as long as an employer believed that employee to be impaired, whether or not that perceived impairment substantially limited a major life activity. 42 U.S.C. § 12102. Applying the pre-Amendments standard, the district court concluded that the USPS knew of Steffen's back injury, but did not consider that impairment to substantially limit a major life activity. In reaching this decision, the district court found that Steffen's limitations, such as his inability to lift more than 25 pounds, have not been considered substantial limitations on major life activities in past cases. The district court also found that the USPS did not believe that his doctors' recommendations understated the extent of his limitations. Accordingly, the USPS did not regard Steffen as having a disability for the purposes of the Rehab Act, and he could not suffer discrimination for being "disabled."

The district court further reasoned that the USPS' requirement that Steffen be 100% healed before he return to work—codified in the "full duty" provision of the Settlement Agreement—violated the Rehab Act.[2] However, the district court held, as Steffen was not covered by the Rehab Act, he did not have standing to challenge

---

[2] The court reasoned that a "100% healed" policy prevents an employer from individually assessing each employee as to whether his impairment prevents him from completing his job. Since such individualized evaluation is requried by the ADA, the district court concluded that a "100% healed" policy constitutes a per se violation of the law.

the USPS' failure to engage in an individualized assessment. Steffen appeals the judgment of the district court.

## II. Discussion

We review a district court's grant of summary judgment de novo, construing all facts in favor of the non-moving party—in this case, Steffen. *Kupstas v. City of Greenwood*, 398 F.3d 609, 611 (7th Cir. 2005). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Kupstas*, 398 F.3d at 611. In other words, if "a rational trier of fact could not find for [Steffen]," then the district court did not err in granting summary judgment. *Rogers v. City of Chicago*, 320 F.3d 748, 752 (7th Cir. 2003).

Steffen argues that sufficient evidence existed for a reasonable jury to find that the USPS regarded him as disabled at the time of his firing, thereby allowing him to bring a claim under the Rehab Act. Steffen also argues that the "100% healed" requirement thrust upon him by the USPS was a per se violation of the Rehab Act. Steffen does not appeal the district court's denial of *his* summary judgment motion. Rather, he asks us to reverse the district court's grant of summary judgment for the defendants and to remand the case for trial.

A violation of the ADA or the Rehab Act occurs when a covered entity "discriminate[s] against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or

discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." ADA, 42 U.S.C. § 12112(a); *see also Garg v. Potter*, 521 F.3d 731, 736 (7th Cir. 2008) ("The [ADA] and Rehabilitation Act prohibit an employer from discriminating against a qualified individual with a disability because of the disability.") (internal quotation marks and citations omitted).

As an initial matter, Steffen must show that he is disabled as defined by the Rehab Act, the ADA, and the relevant regulations.[3] Under the ADA, disability means: "(1) [a] physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) [a] record of such an impairment; or (3) [b]eing regarded as having such an impairment." 29 C.F.R. § 1630.2(g) (2007); *see also Kotwica v. Rose Packing Co., Inc.*, 637 F.3d 744, 748 (7th Cir. 2011).[4]

According to the parties' stipulation, Steffen dropped any claim that he qualified for protection under the Rehab Act on the basis of actual disability. Nor does he argue that there is a record of his disability. He, thus,

---

[3] Congress has not granted the EEOC the authority to interpret the ADA. *See Winsley v. Cook County*, 563 F.3d 598, 604 n.2 (7th Cir. 2009). Nonetheless, both parties cite the EEOC's regulations, *see* 29 C.F.R. § 1630.2., and we, in turn, examine them as instructive guidance.

[4] For an explanation of why the 2001 version of the EEOC's regulations are cited rather than the current regulations, see *infra* Part II.A.

hinges his claim for protection under the ADA and Rehab Act on the fact that the USPS regarded him as being disabled under the ADA. The district court, he contends, erred in concluding otherwise.

## A. ADA Amendments

Before analyzing whether the district court erred in its assessment, we must first address Steffen's argument that the 2009 Amendments to the ADA apply to his case, as they directly implicate the standard for determining whether an employee is "regarded as" disabled by his employer. Prior to the Amendments, an employee was not "regarded as" disabled by his employer unless his employer believed he satisfied the definition of "disabled" under the ADA. *See Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 489 (1999); 29 C.F.R. § 1630.2(l)(2007). Thus, an employee believed to have an impairment was not "regarded as" disabled unless his employer believed that impairment substantially limited the employee in a major life activity. *Id.* The Amendments changed this standard, decreeing that "[a]n individual meets the requirement of 'being regarded as having such an impairment' if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102.

Steffen concedes that our case law prevents him from arguing that the Amendments apply to his case. *See Fredricksen v. United Parcel Serv., Co.*, 581 F.3d 516, 521 n.1

(7th Cir. 2009) ("Congress did not express its intent for [the Amendments] to apply retroactively, and so we look to the law in place prior to the amendments."). He nonetheless cites a district court case from the District of Columbia for the proposition that the Amendments revealed Congress' true intent when it originally passed the ADA. He urges us to follow that court and treat the Amendments as persuasive authority in interpreting the old version of the ADA. As the district court in this case rightly pointed out, however, Steffen simply repackages a retroactivity argument repeatedly rejected by this Court, *see, e.g., Gratzl v. Office of Chief Judges of 12th, 18th, 19th, and 22nd Judicial Circuits*, 601 F.3d 674, 679 n.3 (7th Cir. 2010), and we cannot accede to his request without shirking our obligation to "cite, quote, and apply the ADA as it stood before the amendments." *EEOC v. Autozone, Inc.*, 630 F.3d 635, 639 n.2 (7th Cir. 2010).

Steffen secondly argues that even if the Amendments are not applied to his entire case, they should apply to his requests for future relief. Specifically, he requests that we follow the Amendments when considering injunctive relief in the form of his reinstatement. He directs us to *Jenkins v. National Board of Medical Examiners*, an unpublished opinion in which the Sixth Circuit held that the Amendments are appropriately applied when prospective relief is sought. No. 08-5371, 2009 WL 331638, at *2 (6th Cir. Feb. 11, 2009). In *Jenkins*, a third-year medical student sought more time on his medical boards as an accommodation for his reading disorder. *Id.* at *1. The Sixth Circuit explained that "[w]hen the intervening statute authorizes or affects the propriety of prospective

relief, application of the new provision is not retroactive." *Id.* (quoting *Landsgraf v. USI Film Products*, 511 U.S. 244, 273 (1994)). Thus, the Sixth Circuit evaluated the plaintiff's claim under the new ADA. Steffen argues that the same principle should apply to his requests for prospective relief.

Assuming arguendo we follow the Sixth Circuit's application of the Amendments, *Jenkins* is inapt in this case. In *Jenkins*, the plaintiff filed his case before the Amendments were passed, but the alleged violation of the ADA did not occur until after Congress amended the statute. *Id.* at *1. The plaintiff knew that he had an impending exam and wanted to secure an accommodation before the test occurred. *Id.* The law in effect at the time of the relevant conduct—the denial of an accommodation during the examination—was the amended version of the ADA. *Id.* Indeed, the Sixth Circuit recognized this timing as distinguishing the case from cases in which "actions giving rise to the litigation occurred before the effective date of the amendments." *Id.* at *2.

Unlike in *Jenkins*, the allegedly violative actions in this case transpired before the effective date of the Amendments. The fact that Steffen asked to be reinstated for the USPS' past transgressions does alter the fact that he is complaining of allegedly illegal behavior that took place in 2006: he does not ask this court for injunctive relief. *Accord Geiger v. Pfizer, Inc.*, No. 2:06-CV-636, 2009 WL 973545, at *2 (S.D. Ohio Apr. 10, 2009). The old version of the ADA controls this case.

**B. "Regarded As"**

The applicable version of the ADA requires an employer to believe that an employee is substantially limited in a major life activity in order for that employee to be "regarded as" disabled under the ADA. 29 C.F.R. § 1630.2(l); *Sutton*, 527 U.S. at 489. An employer so regards his employee if: "(1) [the employer] *mistakenly believes* that [the employee] has a physical impairment that substantially limits one or more major life activities, or (2) [the employer] *mistakenly believes* that an actual, nonlimiting impairment substantially limits one or more major life activities." *Sutton*, 527 U.S. at 489 (emphasis added). Importantly, however, the fact that an employer offers an employee an accommodation does not necessarily prove that the employer believed the employee suffered a substantial limitation in a major life activity. *Kupstas*, 398 F.3d at 614. To succeed under the "regarded as" prong, a plaintiff must establish an accepted major life activity under the ADA and prove that his employer believed him to be substantially limited in that major life activity.

**1. Major Life Activity**

The EEOC regulations interpreting the ADA list as major life activities "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i) (2007). This list has not been interpreted as being exclusive, *see Winsley v. Cook County*, 563 F.3d 598, 603 (7th Cir. 2009), but, prior to the Amendments, courts were careful not

to refer to life activities as being major unless they were "of central importance to daily life." *Toyota Motor Mfg. v. Williams*, 534 U.S. 184, 197 (2002); *see also Winsley*, 563 F.3d at 603 ("[T]he listed activities are so important to everyday life that almost anyone would consider himself limited in a material way if he could not perform them.").

Notably, Steffen, in his brief, does not expressly identify the major life activity in which he is allegedly limited. In his Second Amended Complaint, however, he claims that he was limited in the "major life activities of engaging in motor skills, including repetitive bending, stooping, climbing, reaching and twisting." He also claims that he was limited to lifting no more than 25 pounds, that he could not stand for more than 2 hours, and that he needed to alternate between sitting and standing. Steffen also implies that he would not have been able to return to "full duty" work, suggesting that he may have been asserting a substantial limitation in the major life activity of working. Assuming arguendo that Steffen has not waived his proposed major life activities by omitting them from his brief, he has not proven that, for any activities that qualified as major life activities prior to the Amendments, the USPS regarded him as substantially limited in his ability to perform them.[5]

---

[5] We note that with respect to the major life activities Steffen identifies in his Second Amended Complaint, if they qualify as major life activities at all, Steffen was not substantially limited as defined by the ADA and Rehab Acts. That is, the USPS' beliefs aside, he was not legally handicapped. This Circuit's pre-Amendment jurisprudence clearly indicated that
(continued...)

5  (...continued)
an inability to lift 25 pounds was not a substantial limitation on a major life activity. *See, e.g., id.* (inability to lift 35 pounds was not a substantial limitation); *Squibb v. Mem'l Med. Ctr.*, 497 F.3d 775, 782 (7th Cir. 2007) (inability to lift 25-30 pounds not a substantial limitation); *Mays v. Principi*, 301 F.3d 866, 870 (7th Cir. 2002) (expressing doubt that an inability to lift 10 pounds could be considered a substantial limitation). As with lifting, this Circuit's pre-Amendment precedent did not explicitly comment on bending as a major life activity. In light of the standard established in *Toyota*, however, we do not think that bending is central to one's daily life. 534 U.S. at 197. Furthermore, Steffen is precluded only from engaging in bending, stooping, climbing, reaching and twisting repetitively, fostering doubts not only about whether repetitive bending, independent of bending, is a major life activity, but also about whether the inability to perform these movements repetitively is a substantial limitation on the acts. This Court, in *Williams v. Excel Foundry & Machine, Incorporated*, recognized standing as a major life activity. 489 F.3d 309, 311 (7th Cir. 2007). In *Williams*, however, we rejected as a substantial limitation the inability to stand for 30 to 40 minutes—a hindrance much greater than Steffen's inability to stand for over two hours. Finally, Steffen does not qualify as substantially limited in the major life activity of working. To be substantially limited in one's ability to work, one must be significantly restricted in the ability to perform more than just a single job or the particular job that one held before he acquired a disability. 29 C.F.R. § 1630.2(3)(I). Steffen was not precluded from performing a broad range or an entire class of jobs. In fact, the USPS provided an accommodation for Steffen based on the same injury he had when he was fired for the several years prior to

(continued...)

### 2. Substantially Limited

The EEOC's regulations interpreting the ADA, define "substantially limits" as:

> Unable to perform a major life activity that the average person in the general population can perform; or . . . [s]ignificantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

29 C.F.R. § 1630.2(j)(1) (2007); *see also Contreras v. Suncast Corp.*, 237 F.3d 756, 765 (7th Cir. 2001). The regulations further provide that in determining whether someone is substantially limited in a major life activity, one should consider the following factors: "(i) [t]he nature and severity of the impairment; (ii) [t]he duration or expected duration of the impairment; and (iii) [t]he permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment." 29 C.F.R. § 1630.2(j)(2) (2007).

Steffen contends that the USPS regarded him as substantially limited in a major life activity because, in a single line from the deposition of the USPS representative that signed the Settlement Agreement, the USPS

---

[5] (...continued)
his three-year absence, indicating that he could perform other jobs for the USPS.

representative stated that she believed that Steffen was receiving an accommodations for a disability. The following is an excerpt of Emma Hughes' deposition:

> Q: What accommodations do you recall that he received prior to going on AWOL?
>
> A: I'm not sure what his duties involved, but he did not do the full duties of his position prior to—of his position. I'm not sure what his duties were, but they were not full.
>
> Q: At the time that you negotiated this agreement then, Exhibit No. 11, did you believe that Mr. Steffen was receiving accommodations for a disability that he had acquired through an on-the-job injury?
>
> A: No.
>
> Q: Okay. Did you believe that he was receiving accommodations for a disability that he had acquired through an off-the-job injury?
>
> A: Yes.

Steffen argues that Hughes admitted she believed that Steffen "was receiving accommodations for a disability," so, he maintains, the USPS must have "regarded [him] as" disabled. For further support, Steffen underscores that Hughes discussed her understanding of when the USPS was required to offer accommodations to disabled employees, both illustrating her familiarity with the ADA and indicating that she must have known what "disability" meant under the ADA. When she affirmatively answered the final question quoted above, he posits, she knew that disability meant "substantial limita-

tion on a major life activity." Consequently, he argues, her answer must be read as "Yes. I believed that Steffen was receiving accommodations for a substantial limitation on a major life activity. I believed that he was disabled."

Setting aside the fact that Hughes' understanding of the ADA's accommodations requirements was incorrect, there are several reasons why this single line in her deposition is insufficient to prove that the USPS regarded Steffen as being substantially limited in a major life activity. First, many impairments that are considered "disabilities" under the term's colloquial meaning are not "disabilities" for the purposes of the ADA and the Rehab Act, *see, e.g., Desmond v. Mukasey*, 530 F.3d 944, 952 (D.C. Cir. 2008), and nothing about the context of Hughes' deposition suggests that either she or her questioner was referring to the strict definition of "disability" found in the ADA.

Moreover, the question eliciting Hughes' allegedly damning answer centered on whether Steffen had received accommodations in the past and whether those accommodations were the result of an on-the-job or off-the-job injury. The fact that Steffen previously received an accommodation–or that Hughes believed he had—does not prove that she believed that he suffered a substantial limitation in a major life activity. *See Kupstas*, 398 F.3d at 614. The question did not prompt her to contemplate whether Steffen's impairments rose to the level of a substantial limitation on a major life activity, and Steffen's suggestions that she entertained this line of analysis strain credulity.

Finally, Hughes' deposition affirmatively suggests that she did not consider Steffen disabled under the ADA, or, at the very least, that she did not know either way. She stated, for example, that she did not know the extent of his injuries; that she believed his union representative had told her that he would be able to return to full duty; that she did not believe that it would be impossible to return to work; and that she did not know the seriousness of his injuries. Her testimony does not indicate that the USPS mistakenly believed that Steffen suffered from an impairment he did not have, nor does it suggest that the USPS mistakenly believed that the impairments he did have were more limiting than his doctors had expressed. *See Sutton*, 527 U.S. at 489. In short, Hughes' deposition does not prove that the USPS regarded Steffen as disabled.

Steffen fails to prove that he falls within the ambit of the ADA and Rehab Acts. He did not provide evidence by which a reasonable jury could conclude that the USPS regarded him as substantially limited in a major activity. Thus, Steffen's claim must fail.

### C.  Per Se Violation

Notwithstanding Steffen's inability to prove he was covered by the ADA or the Rehab Act, he claims that the Settlement Agreement included a "100% healed" requirement, which was a per se violation of the ADA and the Rehab Act. Steffen argues that the ADA requires employers to individually assess potential or current employees to determine whether they are qualified for a

particular job, with or without an accommodation despite their disability. *See Weigel v. Target Stores*, 122 F.3d 461, 466 (7th Cir. 1997) ("[T]he ADA's 'qualified individual' inquiry . . . necessarily involves an individualized assessment of the individual and the relevant position . . . ."). Since a "100% healed" policy prevents individual assessment, it necessarily operates to exclude disabled people that are qualified to work, which constitutes a per se violation. *See, e.g., Powers v. USF Holland, Inc.*, 667 F.3d 815, 819 (7th Cir. 2011) ("[A]ll courts 'agree that a 100% rule is impermissible as to a *disabled* person . . . .'" (quoting *Henderson v. Ardco, Inc.*, 247 F.3d 645, 653 (6th Cir. 2001)) (emphasis in original)).

Whether or not Steffen presented enough evidence to show that the USPS may have a "100% healed" policy regarding disabled workers, his argument has a separate, fatal flaw. In order to have standing to sue an employer for a per se violation of the ADA or Rehab Act, one still has to meet the definition of "disabled person" under those statutes. *See id.* ("[A]ll courts agree that a 100% rule is impermissible as to a *disabled* person–but one must first be disabled.") (internal quotation marks and citation omitted) (emphasis in original); *Hendricks-Robinson v. Excel Corp.*, 154 F.3d 685, 688 (7th Cir. 1998) (noting that the parties did not dispute that the plaintiff-employees were either disabled or regarded as disabled before addressing whether a "physical fitness" test was a per se violation of the ADA); *Hutchinson v. United Parcel Serv., Inc.*, 883 F. Supp. 379, 397-98 (N.D. Iowa 1995) (holding that a 100% healed requirement is a per se violation of the ADA, but that plaintiff "[did] not

have standing, because she [was] not a person with a disability within the meaning of the ADA"). Steffen waived any argument that he was actually disabled under the ADA, does not put forth any argument that he had a record of being disabled, and failed to establish that he was regarded as being disabled. Thus, he lacks standing to bring a per se violation claim against the USPS.

Although Steffen does not make this argument, it is worth noting that at least two circuits have suggested that proof of an employer's "100% healed" policy can supply circumstantial evidence that the employer actually regarded an employee as substantially limited in the major life activity of work. In particular, a "100% healed" policy may show that the employer did not allow the employee to return to work because of the employee's impairment. *See Jones v. UPS, Inc.*, 502 F.3d 1176, 1188-89 (10th Cir. 2007); *Henderson*, 247 F.3d at 653. We declined to follow the Sixth and Tenth Circuits in *Powers v. USF Holland, Incorporated*, where we reasoned that an employer is free to be risk averse and require that its employees are 100% healthy as long as those employees are not covered by the ADA. 667 F.3d at 823-24. Our view comports with the Supreme Court's pre-Amendments conclusion that "an employer is free to decide that physical characteristics or medical conditions that do not rise to the level of an impairment–such as one's height, build, or singing voice–are preferable to others, just as it is free to decide that some limiting, but not substantially limiting, impairments make individuals less than ideally suited for a job." *Sutton*, 527

U.S. at 490-91. Therefore, Steffen does not have standing to bring a claim against the USPS for a per se violation of the ADA.

### III. Conclusion

For the foregoing reasons, we AFFIRM the district court's grant of summary judgment for the defendants.