NONPRECEDENTIAL DISPOSITION
To be cited only in accordance
with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued November 5, 2013
Decided February 18, 2014

**Before**

WILLIAM J. BAUER, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 13-1947

IRENE A. KUROWSKI,
            *Plaintiff-Appellant*,

            *v.*

ERIC K. SHINSEKI,
Secretary of Veterans Affairs,
            *Defendant-Appellee*.

Appeal from the
United States District Court for the
Northern District of Illinois,
Eastern Division.

No. 12 C 1967

James F. Holderman,
*Judge*.

**O R D E R**

Irene Kurowski filed suit against the Secretary of Veterans Affairs alleging that she experienced discrimination on account of disability and retaliation in violation of the Rehabilitation Act, 29 U.S.C. § 794, while working for a Veterans Affairs hospital. The district court granted summary judgment for the Secretary. We affirm. In addition to effectively waiving her discrimination claim, she failed to produce sufficient evidence to support her allegations.

## I. Background

Kurowski began working at the Edward Hines Jr. VA Hospital in suburban Chicago in November 1988. She worked as a sales associate in the hospital's gift shop (or canteen). Kurowski's employment record was not without blemish. Her last performance review before the events giving rise to this lawsuit rated her as "minimally satisfactory," citing absenteeism and poor customer service. She also had problems with insubordination and had been warned repeatedly about her excessive use of leave, much of which had been taken without giving adequate notice.

In January 2008 she took three months' leave under the Family and Medical Leave Act to recover from surgery on her right foot. Even before this surgery, she had problems with mobility. The previous year she had been diagnosed with osteoarthritis in both knees, though she was able to perform her duties without accommodation and does not allege that condition alone rendered her disabled. Kurowski returned to work on April 14, 2008. She testified that at this point she was able to cook, clean, walk (using a cane), bathe, and dress herself, though she continued to have pain in her foot. She provided her supervisor, James Sipple, with a note from her surgeon, Dr. Donald Hugar, stating that she could work four to six hours at a time with breaks to elevate and ice her foot. Her first week back on the job she worked six-hour shifts at the gift shop and was allowed to take sitting breaks. Due to construction in the shop, there was no room for a chair or stool by the register, so Kurowski's chair had to be placed outside the shop entrance. The next week Kurowski provided Sipple with a note from Dr. Hugar stating she was "released to return to work" as of April 21 as long as she was given a chair or stool at her work station. She then resumed a full-time schedule.

About a week after returning to duty, Kurowski told Sipple that the time she spent standing at the register was causing her pain. In late April or early May, she asked for additional leave without pay, which Sipple rejected. Sipple told her that she could work full time, go part time (which would result in a loss of benefits), or leave the position. She continued working full time. Sipple later suggested that Kurowski transfer from the gift shop to the food court to allow more ready access to a chair or stool. She agreed to the transfer hoping it would provide lighter duty. She started in the food court the first week of May. The majority of her time was spent at the cash register, where she was provided with a stool, but she was also tasked with transporting food, restocking shelves, and cleaning. She claims that these duties were too rigorous, causing additional pain and aggravating her osteoarthritis. John Hardesty was one of Kurowski's supervisors after her transfer. He was skeptical of Kurowski's pain and physical limitations, noting that she at times would walk briskly without the assistance

of the cane she carried. (He likened her use of a cane to that of Charlie Chaplin.) He also expressed disapproval that she voiced complaints about her physical condition to customers.

On the morning of June 16, Kurowski called Hardesty to tell him that she would likely be unable to come in that day. A storm the previous night had damaged her condo such that she could not lock the door on her balcony, and she worried that repairmen working outside her door could easily enter her unit. She claims that when she asked to use her annual leave, Hardesty advised her "to do what you have to do." She did not come in, and Hardesty marked her absent without leave. As a result, termination proceedings were initiated. Kurowski received notice of the proceeding through the mail, and her attorney sent a letter to regional manager Neil Toyne arguing against termination. Toyne decided to terminate Kurowski's employment effective July 28, 2008.

After exhausting her administrative remedies, she filed suit against the Secretary of Veterans Affairs in the Northern District of Illinois. The complaint contained three counts: (1) disability discrimination in violation of the Rehabilitation Act; (2) retaliation in violation of the Rehabilitation Act; and (3) sex discrimination in violation of Title VII. The district court entered summary judgment for the Secretary on all counts. Kurowski appealed, challenging only the court's decision rejecting the first two claims.

## II. Analysis

We review the district court's grant of summary judgment de novo, construing the evidence and drawing reasonable inferences in favor of the nonmoving party. *Coca-Cola Enters., Inc. v. ATS Enters., Inc.*, 670 F.3d 771, 774 (7th Cir. 2012). Summary judgment is appropriate if the evidence demonstrates that there are no genuine issues of material fact and the Secretary is entitled to judgment as a matter of law. *Id*. (citing FED. R. CIV. P. 56(a)). Claims under the Rehabilitation Act apply the same substantive standards as the Americans with Disabilities Act ("ADA"). 29 U.S.C. § 794(d); *Branham v. Snow*, 392 F.3d 896, 902 (7th Cir. 2004). Because the substantial 2009 amendments to the ADA became effective after the events precipitating this litigation and are not retroactive, "we cite, quote, and apply the ADA as it stood before the amendments." *EEOC v. AutoZone, Inc.*, 630 F.3d 635, 639 n.2 (7th Cir. 2010).

Kurowski has failed to establish a prima facie case of disability discrimination. As

an initial matter, she must demonstrate that she suffered from a disability. *Steffen v. Donahoe*, 680 F.3d 738, 743 (7th Cir. 2012). The ADA defines "disability" as: "(1) [a] physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) [a] record of such an impairment; or (3) [b]eing regarded as having such an impairment." *Id.* (quoting 29 C.F.R. § 1630.2(g) (2007)). At summary judgment the district court rejected Kurowski's argument that she suffered from an actual disability. She does not reassert that argument here, but instead argues that she was regarded as having a disability. However, the district court correctly noted that Kurowski advanced neither a "regarded as" nor a "record of" theory of disability at summary judgment. While her complaint alleges she was disabled under all three parts of the definition by parroting the language of the statute, she only advanced an actual disability theory before the district court. Kurowski thus fails to present a properly preserved argument to this court that she was disabled. She forfeited any "regarded as" or "record of" theory by failing to raise it before the district court and waived her actual disability argument by abandoning it on appeal. *See Local 15, Int'l Bhd. of Elec. Workers v. Exelon Corp.*, 495 F.3d 779, 783 (7th Cir. 2007). With all possible routes to proving her disability procedurally foreclosed, her claim necessarily fails.

Even if Kurowski's arguments were properly preserved, she has not demonstrated that she was regarded as having a disability. "Under the 'regarded as' prong, the employer must believe … that the employee has an impairment that substantially limits one or more major life activities." *Powers v. USF Holland, Inc.*, 667 F.3d 815, 823 (7th Cir. 2011). Though Kurowski lists several major life activities as potentially being limited, including walking and standing, the only one she develops in any meaningful way is the activity of working, which requires that her employer regarded her as having a limitation that "significantly restricts [her] ability to perform a class of jobs or a broad range of jobs in various classes." *Weiler v. Household Fin. Corp.*, 101 F.3d 519, 525 (7th Cir. 1996). Kurowski fails to identify any evidence showing that she was so regarded. To the contrary, the evidence she cites shows that her supervisors, Sipple and Hardesty, viewed her as capable of performing her work. Though Kurowski claims that Sipple threatened to reduce her to part-time status after her request for unpaid leave, that is directly contradicted by her own statement of facts. As she describes that conversation, Sipple stated that she could continue working *full time*, move to a part-time schedule, or resign. An offer of full-time employment does not show an employee is regarded as being unable to work. She also cites Hardesty's comment that Kurowski used her cane like Charlie Chaplin. But that comment shows that Hardesty actually thought she had exaggerated her physical limitations, not that he viewed her as disabled.

Kurowski's retaliation claim likewise fails. In order to make out a retaliation

claim, she must provide evidence that: (1) she engaged in protected conduct; (2) that she was subjected to an adverse employment action; and (3) that the protected conduct caused the adverse employment action. *Povey v. City of Jeffersonville*, 697 F.3d 619, 624 (7th Cir. 2012). The Secretary concedes that the district court was correct in treating Kurowski's April 7, 2008 request for a shortened work shift as protected conduct and her termination as an adverse employment action. Yet Kurowski points to no evidence apart from allegedly suspicious timing that demonstrates her termination was caused by her request. And "[s]peculation based on suspicious timing alone … does not support a reasonable inference of retaliation." *Sauzek v. Exxon Coal USA, Inc.*, 202 F.3d 913, 918 (7th Cir. 2000). In addition, Kurowski concedes that Toyne, who had the final say in her termination, did not know of her protected conduct. Without evidence of causation, Kurowski's claim does not survive summary judgment.

Kurowski attempts to salvage her retaliation claim by expanding the scope of the protected activities and adverse employment actions at issue. First, she claims that she experienced adverse employment actions in addition to termination. An employment action is adverse if it "well might have dissuaded a reasonable worker" from engaging in protected conduct. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (internal quotation marks omitted). She argues that her transfer to the food court was an adverse action. But she consented to the transfer. It was presented by Sipple as a way to alleviate her discomfort and she opted to switch jobs. She also claims that the denials of her requests for reduced hours and unpaid leave were adverse employment actions. Nothing about these denials would appear to dissuade a reasonable worker from engaging in further protected conduct. Second, she claims that her late-April/ early-May request for leave without pay is protected conduct. Even if she is correct, she still runs into a problem of causation. She can point to no evidence, besides timing, that this incident caused her termination.

For the foregoing reasons, the district court's judgment is **AFFIRMED**.