**Ryan TREADWELL, Plaintiff,**

**v.**

**MCHENRY COUNTY, ILLINOIS, et al., Defendants.**

**Case No: 13 C 50077**

United States District Court, N.D. Illinois.

Signed June 20, 2016

---

Kenneth N. Flaxman, Joel A. Flaxman, Kenneth N. Flaxman P.C., Chicago, IL, for Plaintiff.

George Michael Hoffman, Woodstock, IL, for Defendants.

## ORDER

FREDERICK J. KAPALA, District Judge

Defendant Correct Care Solutions's motion to supplement its motion for summary judgment [98] is granted. Plaintiff's motion for summary judgment [73] is denied. Correct Care Solution's motion for summary judgment [71] is granted in part and denied in part. Defendants McHenry County and Sheriff of McHenry County's motion for summary judgment is denied.

## STATEMENT

Plaintiff, Ryan Treadwell, has sued defendants, McHenry County, Illinois and the Sheriff of McHenry County (collectively the "County Defendants"), and Correct Care Solutions, LLC[1] ("CCS"), alleging that CCS, who provides medical vendor services at the McHenry County Jail under contract with McHenry County, has a policy or practice which caused him to suffer unconstitutional harm due to a lack of medical care. Principally, Treadwell claims that CCS has a policy of refusing to provide a family of medications called benzodiazepines to detainees or inmates who come in with a prescription for any of those medications. Instead, CCS begins the individual on a withdrawal protocol, given the highly addictive nature of benzodiazepines. Treadwell, who was prescribed a benzodiazepine called clonazepam (Klonopin) to treat his Tourette's Syndrome,[2] was subjected to that policy during his fifty-seven-hour stay in McHenry Jail and suffered some withdrawal symptoms during that time and for approximately a

week thereafter. CCS has now moved for summary judgment, arguing that there is insufficient evidence on the record to show that either the decision to take Treadwell off Klonopin or the withdrawal protocol that was utilized were deliberately indifferent to any medical need. The County Defendants have also moved for summary judgment, arguing that they cannot be held accountable for CCS's actions. Finally, Treadwell has moved for partial summary judgment, as to liability only, in his favor. For the reasons which follow, CCS's motion is granted in part and denied in part, the County Defendants' motion is denied, and Treadwell's motion is denied.

## I. BACKGROUND [3]

Prior to going to bed on Christmas Eve, December 24, 2012, Treadwell, who was eighteen at the time and living with his parents, took his medication, as was his normal practice. The next day, December 25, 2012, Treadwell got into an altercation with his father in the evening, which resulted in Treadwell leaving the home and

1. CCS was originally added to this litigation as a third party defendant, but has since been included as a regular defendant in Treadwell's most recent, and currently operative, complaint.

2. Although little is in the record concerning the severity of Treadwell's Tourette's Syndrome, it is apparently serious enough that he is currently considered disabled by the Social Security Administration and receives disability benefits as a result.

3. Treadwell objects to this court's consideration of CCS's expert's report at this stage, as the report is not sworn and CCS neglected to offer an affidavit from its expert asserting that it is sworn. See Estate of Williams v. Ind. State Police, 26 F.Supp.3d 824, 837 (S.D.Ind. June 13, 2014) ("It is well settled that unsworn statements, including expert reports, are inadmissible to support or oppose summary judgment."). CCS has moved to supplement the record with an affidavit, which adds nothing to the expert's report except to swear to its contents under penalty of perjury, and

Treadwell has objected. A review of cases facing similar situations leads this court to conclude that the majority rule is that a "belated affidavit is sufficient to support the use of the report at the summary judgment stage." Harpold v. Ethicon Endo–Surgery, Inc., No. 1:06–cv–1666–DFH–DML, 2009 WL 688984, at *1 (S.D.Ind. Mar. 11, 2009) (Hamilton, J.); see also Simmons v. Philips Elecs. N. Am. Corp., No. 2:12–CV–39–TLS, 2015 WL 1418772, at *5 (N.D.Ind. Mar. 27, 2015); Lock Realty Corp. IX v. U.S. Health, L.P., No. 3:06–cv–487RM, 2009 WL 2970330, at *3 n. 1 (N.D.Ind. Sept. 14, 2009); Maytag Corp. v. Electrolux Home Prods., Inc., 448 F.Supp.2d 1034, 1064 (N.D.Iowa Sept. 8, 2006) (collecting cases). Accordingly, the motion to supplement is granted. Ultimately, however, the admission or exclusion of CCS's expert's report, although it provides helpful context and background, would not alter this court's conclusion on any of the issues addressed in this order.

ultimately being arrested for domestic battery without a warrant at 11:40 p.m. that same night, thereby missing his nightly medication. Treadwell arrived at the McHenry County Jail at 1:25 a.m. on December 26, 2012. As part of the intake process, Treadwell informed the staff of his Tourette's Syndrome and other illnesses (primarily mental illnesses) and provided information as to his prescriptions. Sometime after 2 a.m. that same day, the paramedic on duty at the jail verified Treadwell's prescriptions for Klonopin and pimozide (Orap), among others. At the time of his admission, Treadwell had been on Klonopin for fourteen years for his Tourette's Syndrome, although he admitted in his deposition that his doctors had attempted to wean him off of it in the past without success. The next morning, Treadwell was taken before a Judge at the jail, who set his bond and appointed the public defender to represent Treadwell.

CCS has a standing policy of withdrawing inmates, including those with a valid prescription, from benzodiazepine use and have enacted a standard protocol to mitigate and control the withdrawal symptoms.[4] CCS has enacted this policy because benzodiazepines are considered dangerous, are highly addictive, and can produce a high. Similarly, CCS, at least at McHenry County Jail, has a standing policy of failing to give prescribed antipsychotics, like Orap, until its psychiatrist has seen the inmate, except for those that it has deemed "no-miss" medications (which Orap is not). The contract which sets out CCS's duties at McHenry County Jail gives CCS broad discretion in the provision of medical care, and the setting of policies concerning care, to the inmates. The contract is signed by individuals representing McHenry County and CCS.

CCS's benzodiazepine withdrawal protocol contemplates the gradual tapered use of a different, less dangerous benzodiazepine, chlordiazepoxide (Librium), over five days along with symptom monitoring and use of a clinical institute withdrawal assessment ("CiWA") scale to track the severity and improvement in withdrawal symptoms. The CiWA scale has a number of withdrawal symptoms that are "scored" based on the severity of witnessed symptoms and subjective patient complaints. The scores for each of the ten withdrawal symptoms are then aggregated, with a score under 10 considered stable, 10-15 considered mild to moderate withdrawal symptoms, 16-19 considered moderate withdrawal symptoms, and greater than 20 considered severe (out of a maximum possible of 67). It also includes a vital signs (pulse and blood pressure) screening and has a screening for suicidal thoughts or feelings of hopelessness. Nurses, who monitor the patient and apply the withdrawal protocol, are supposed to contact a physician if the CiWA score exceeds a particular range, if the pulse or blood pressure assessments exceed certain parameters, or if an inmate is having a hard time with anxiety or experiences a seizure.

As part of the protocol, Treadwell was housed in a special cell to allow for easy regular monitoring. Also pursuant to the protocol, CCS employees provided Treadwell with 50 mg of Librium at 8:00 p.m. on December 26, 2012 and at 9:00 a.m., 1:00 p.m., and 8 p.m. on December 27, 2012. Treadwell was evaluated by a nurse at 9:30 a.m. on December 27, 2012 and scored a 12 on the CiWA scale, followed by a 5 and a 4 that same afternoon and evening. Treadwell filed two complaints concerning his medical care while at McHenry County Jail, both seeking his prescription medi-

---

4. CCS has an exception to the automatic weaning where the benzodiazepine is being used for emergent medical conditions or life threatening conditions, but that is not relevant to the instant case.

cations and medical care for his withdrawal symptoms, including stomach pain. A nurse at the jail spoke to Treadwell concerning his second complaint, and told him that he would have "repercussions or ramifications" from withdrawing, meaning he would suffer at least some symptoms of withdrawal, and provided him with Zantac to assist with his stomach problems and a painkiller for his complaints of discomfort.[5]

On December 28, 2012, a judge ordered Treadwell released on bond. There is nothing in the record to suggest he would not have received the remainder of the protocol had that not occurred. Treadwell testified that, when he went before the judge on December 28, he was sweating, his hands were shaking, he was hallucinating, and his stomach hurt. Treadwell also testified that he suffered from withdrawal symptoms throughout his stay at McHenry County Jail and for approximately a week thereafter, even though he resumed his normal medication on the evening of December 28. During his time at the jail, Treadwell was never treated by a licensed physician.

In his amended complaint, Treadwell brings a Monell, policy-based claim against all three defendants based on his medical treatment at the jail. CCS has moved for summary judgment, arguing that there is insufficient evidence to show that any of its policies resulted in deliberate indifference to any of Treadwell's serious medical needs. The County Defendants have separately moved for summary judgment, arguing primarily that, even if the court rejects CCS's motion, they should not be held liable for acts taken pursuant to CCS's policies. Finally, Treadwell himself

has moved for partial summary judgment, arguing that the evidence shows that any reasonable jury would find that he was treated unconstitutionally. Treadwell and CCS have both offered expert opinions in support of their motions for summary judgment.

## II. ANALYSIS

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In evaluating such a motion, the court's role is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. Preddie v. Bartholomew Consol. Sch. Corp., 799 F.3d 806, 818–19 (7th Cir.2015). "A genuine issue exists as to any material fact when the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Fidlar Techs. v. LPS Real Estate Data Solutions, Inc., 810 F.3d 1075, (7th Cir.2016) (quotation marks omitted). The court must draw all reasonable inferences in the light most favorable to the party opposing the motion. See id. at 812–13. "If a party moving for summary judgment has properly supported his motion, the burden shifts to the nonmoving party to come forward with specific facts showing that there is a genuine issue for trial." Cincinnati Life Ins. Co. v. Beyrer, 722 F.3d 939, 951 (7th Cir.2013) (emphasis and quotation marks omitted).

### A. CCS's and Treadwell's Motions for Summary Judgment

■ Before addressing the parties' arguments as to the merits of the case, the

---

5. The parties dispute whether a nurse has the authority under Illinois law to evaluate a patient's conditions and dispense medicine as the nurses in this case did. The court need not resolve that dispute, however, as whether the defendants may have policies which violate

state regulations as to who can practice certain kinds of medicine does not inform the question of whether the policies in contention in this case (which are different policies altogether) caused a violation of Treadwell's constitutional rights.

court must first confront the parties' contentions over what standard controls the medical care due to Treadwell in the instant case. Treadwell argues that the objective unreasonableness standard derived from the Fourth Amendment applies to his case, as he argues that the evidence suggests he was merely an arrestee, rather than a pretrial detainee, at the time of his stay in McHenry County Jail. See Lopez v. City of Chi., 464 F.3d 711, 718–19 (7th Cir.2006). Defendants argue that the more-familiar-to-medical-claims deliberate indifference standard derived from the Fourteenth Amendment applies, as they argue that the fact that Treadwell testified that a judge set his bond on December 26, 2012 requires the conclusion that probable cause was found to detain him pending trial. See Burton v. Downey, 805 F.3d 776, 784 (7th Cir.2015). The relevant question, then, is whether a judicial determination of probable cause was made prior to Treadwell's incarceration at the jail by the judge on December 26, 2012, with a "yes" to that question requiring the application of the Fourteenth Amendment's standard and a "no" requiring application of the Fourth Amendment's standard. See Lopez, 464 F.3d at 718–19.

Although the copy of the verified complaint in Treadwell's criminal case included in the summary judgment record is devoid of the judge's signature on the line indicating "probable cause found (if warrantless arrest)," that copy is also without a file stamp or case number. The court has obtained, and takes judicial notice of, an official stamped copy of the verified complaint, which contains the judge's signature

clearly showing that the judge found probable cause on December 26, 2012, prior to ordering Treadwell's continued detention. See Deicher v. City of Evansville, Wis., 545 F.3d 537, 541 (7th Cir.2008) (holding it is proper to take judicial notice of court documents); Bishop v. Cross, No. 15–cv–1119–DRH, 2015 WL 7008178, at *1 n. 2 (S.D.Ill. Nov. 12, 2015) ("Court documents are, of course, public records of which the Court can take judicial notice."). Accordingly, the Fourteenth Amendment's deliberate indifference standard applies.

■■■ "[D]eliberate indifference to [the] serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain" such that a prisoner may bring a cause of action against a prison official.[6] Estelle v. Gamble, 429 U.S. 97, 104–05, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) (quotation marks omitted). In order to show deliberate indifference, Treadwell must have evidence that defendants' medical decisions were "such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible did not base the decision on such a judgment." King v. Kramer, 680 F.3d 1013, 1018–19 (7th Cir.2012) (quotation marks omitted). However, "[i]n evaluating the evidence," this court "must remain sensitive to the line between malpractice and treatment that is so far out of bounds that it was blatantly inappropriate or not even based on medical judgment." Id. at 1019. Indeed, even gross negligence is insufficient to meet the necessary standard. See id. at 1018. Nevertheless, plaintiff is

6. Estelle involved a convicted prisoner protected under Eighth Amendment's Cruel and Unusual Clause. Treadwell, as a pretrial detainee at the time of the instant claim, is protected by the Fourteenth Amendment's Due Process Clause. See Burton, 805 F.3d at 784 ("Burton's constitutional rights as a pretrial detainee are derived from the Due Process Clause of the Fourteenth Amendment, which prohibits deliberate indifference to his serious medical needs."). This point is academic, however, as the Seventh Circuit has held that the standards under the Eighth and Fourteenth Amendments are "essentially the same" and has cited and reviewed cases under the two clauses interchangeably. See id.

not required to show "intentional harm" or "that he was literally ignored." Id. at 1018–19 (quotation marks omitted). Since Treadwell's claim is founded on Monell, Treadwell must also show that his harm was caused by a policy or policies of the defendant, see Monell v. Dep't of Social Servs. of N.Y.C., 436 U.S. 658, 690–91, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), but in this case it is undisputed that the complained-of actions were taken pursuant to an express policy promulgated by CCS.

■ Before addressing the parties' arguments concerning the benzodiazepine prescription and withdrawal, the court will first consider whether the failure to provide Orap is evidence of deliberate indifference. The court concludes that no reasonable jury could conclude defendants were deliberately indifferent as a result of the failure to provide Orap. Treadwell has presented insufficient evidence to suggest that the fifty-seven hour delay in Orap treatment caused him to undergo any withdrawal symptoms (the experts seem to be in agreement that the withdrawal was caused by the lack of Klonopin), caused the level of Orap in his blood to drop to levels sufficient to aggravate his Tourette's Syndrome, or had any other effect on Treadwell whatsoever. Although the evidence shows he requested the medication, there is nothing on the record to suggest the refusal to provide Orap to him was deliberately indifferent to a serious medical need, given the undisputed fact that Orap, like many psychotropic drugs, requires some time to clear the blood stream and caused no symptoms of withdrawal or resurgence of Treadwell's Tourette's Syndrome. See also ORAP (Pimozide) Tablets, reference ID: 3020950 http://www.accessdata.fda.gov/drugsatfda_docs/label/2011/017473s046lbl.pdf (accessed April 29, 2016) (discussing the long half life of Orap). Accordingly, CCS's motion for summary judgment is granted as to any claims arising from the denial of Orap.

Although the parties argue them together, this court finds that this case is reasonably split into two separate issues concerning Klonopin: (1) whether the benzodiazepine withdrawal protocol utilized by CCS was so poor as to be deliberately indifferent and (2) whether the decision to impose the protocol at all was deliberately indifferent, that is to say, whether CCS in this case can be held liable for deliberate indifference where it refused to provide a prescribed medication as a matter of policy rather than independent medical judgment which ultimately led to withdrawal symptoms.

### 1. The Protocol Itself

■ The first issue, which is the only issue on which Treadwell's expert opined and the primary issue on which the defendants' expert opined, is whether the treatment provided at the jail in the form of the withdrawal protocol was so poor as to be evidence of deliberate indifference. However, even if a jury were to accept Treadwell's expert's testimony in its entirety and reject all of defendants' expert's testimony, no reasonable jury could find in Treadwell's favor on this issue. Treadwell's expert opined that she believed the withdrawal protocol should be tailored to each patient by a doctor, rather than imposed in a one-size-fits-all manner until something alerts the nursing staff to contact a physician or make a change, as CCS's withdrawal protocol functions. She also opined that a well-tailored withdrawal protocol for benzodiazepines can eliminate all withdrawal symptoms, and that CCS's protocol, as written, was likely to result in at least some withdrawal symptoms. However, she also acknowledged in her deposition that one-size-fits-all treatment protocols are commonly used in the medical field, (see, e.g. Holland Dep. at 49–50 ("[T]here's a protocol that needs to be followed, um, you know, that has been set

up. So it's very possible that some hospitals or some treatment wards—for instance, the detox ward at Bellevue, they probably had a particular way they wanted it done on that ward, and that was the way that the doctors and nurses did it on that ward. So sometimes you have to do it the way you're told and not the way you like to do it."), indeed, she testified that a standardized program is becoming the norm in medical institutions (see id. at 102.). Moreover, Treadwell's expert did not testify that a protocol which was likely to result in some withdrawal symptoms was so far afield from normal medical practice as to be evidence of deliberate indifference. Thus, the most a reasonable jury could make of Treadwell's expert's testimony is that a customized withdrawal schedule and/or a schedule which results in no withdrawal symptoms is ideal, but the jail is not required to provide ideal treatment. See Forbes v. Edgar, 112 F.3d 262, 267 (7th Cir.1997) ("[Plaintiff] is not entitled to demand specific care. [He] is not entitled to the best care possible. [He] is entitled to reasonable measures to meet a substantial risk of serious harm to [him]. The defendants have taken those measures."). It is not even clear that the evidence would suggest that reliance on the protocol was negligent in this case, but even if the evidence could establish negligence, neither that nor even gross negligence is enough to show deliberate indifference. King, 680 F.3d at 1018. Accordingly, CCS's motion for summary judgment is granted, and Treadwell's motion is denied, as to that issue.

### 2. The Decision to Deny Treadwell His Prescribed Medications

▇ The more troubling issue, however, is the policy-based decision to deny Treadwell his prescribed medication and apply the protocol to Treadwell in the first place. It is undisputed that Treadwell came into the jail with a valid prescription for Klonopin and that CCS's policy required that Treadwell be taken off of the benzodiazepine and did not provide either an independent medical examination prior to making that decision or a replacement to treat Treadwell's Tourette's Syndrome. The federal courts that have looked at similar situations have arrived at different results, although in those cases the court is typically dealing with the automatic substitution of narcotic painkillers for non-narcotic variants by policy, and even there the majority rule appears to be that an automatic substitution policy which causes unnecessary pain runs afoul of the deliberate indifference standard. See Grawcock v. Hodges, No. 10–CV–345–RLM, 2012 WL 3245977, at *4 (N.D.Ind. Aug. 6, 2012) ("Mr. Grawcock can show (and there is no disagreement on this) that Ms. Caldwell made her decision to deny the narcotic pain medication based on a policy rather than on her medical assessment of whether he required it. This deflates Ms. Caldwell's argument that she couldn't have been deliberately indifferent because she provided some pain medication, even if not the proper kind. Instead, it tends to show that Ms. Caldwell didn't base the decision to give over-the-counter medication in lieu of Oxy-Contin and Soma on a medical decision at all, but made the decision to adhere to a policy. Since the decision wasn't based on her (or a doctor's) assessment that Mr. Grawcock didn't medically require the prescription medication, a jury may find that the decision was deliberately indifferent to Mr. Grawcock's pain."); see also French v. Daviess Cnty., Ky., 376 Fed.Appx. 519, 523 (6th Cir.2010); Wethington v. Tippecanoe Cnty. Sheriff, No. 4:10 CV 84, 2011 WL 488652, at *4 (N.D.Ind. Feb. 7, 2011); Estate of Clutters v. Sexton, No. 1:05cv223, 2007 WL 3244437, at *8 (S.D.Ohio Nov. 2, 2007).

But even leaving aside that majority rule as it applies to pain medicine, this

court concludes that this case is covered by the Seventh Circuit's opinion in King v. Kramer. There, King was prescribed alprazolam, a benzodiazepine like Klonopin, but that medication was not permitted in the La Crosse County Jail by policy. 680 F.3d at 1015. So, although he was given a tapered dose over two days, he was ultimately denied that medication and instead the jail's medical vendor put him on a beta blocker, which was permitted by policy but ultimately not successful in treating King's underlying condition. Id. at 1015–16. Thereafter King died, with the benzodiazepine withdrawal being a likely contributing factor. Id. at 1017. In reversing the district court's grant of summary judgment on King's Monell claim against the county, the Court stated that it had "previously said that a municipality would violate the Eighth Amendment under Monell if it had a policy requiring jail staff to throw away all prescription medications without implementing an appropriate mechanism for providing alternative treatment. This case eerily tracks that hypothetical example: [the jail's medical vendor] routinely switched patients off prescribed medications without appropriate oversight by a physician." Id. at 1021 (citation omitted). Here, CCS did just that: it denied Treadwell his validly prescribed medication without any physician oversight of the decision based solely on its policy of denying certain prescribed medications to newly admitted inmates and, thereby, led to painful withdrawal symptoms. Indeed, even more problematically than in King, CCS did not provide an alternate treatment for Treadwell's Tourette's Syndrome. As in King, a reasonable jury could conclude that Treadwell suffered a painful and unnecessary withdrawal based on a blanket policy, rather than independent medical judgment, and therefore CCS was deliberately indifferent to his serious medical needs by way of its express policy.

Thus, CCS's motion for summary judgment is denied as to the issue of the policy-based decision to deny Treadwell Klonopin. However, the court also concludes that there remains a genuine issue of material fact for a jury to decide, and therefore Treadwell's partial motion is likewise denied. Specifically, in King, the Seventh Circuit declined to hold that policies which automatically denied benzodiazepines to an inmate were "per se unconstitutional." Id. at 1020. Instead, the Court left open the possibility that such a policy might be appropriate, including potentially like in this case where it is undisputed that CCS believed benzodiazepines are typically very dangerous and addictive. See Johnson v. Gudmundsson, 35 F.3d 1104, 1112 (7th Cir. 1994) ("[E]ven where many or all of the material facts are undisputed, the court still must ascertain that judgment is proper as a matter of governing law." (quotation marks omitted)); see also Gerhartz v. Richert, 779 F.3d 682, 686 (7th Cir. 2015). Of course, that evidence is counterbalanced by the fact that, in this case, it is also undisputed that Treadwell had been prescribed and taking Klonopin for fourteen years, apparently without incident. In any event, since the issue is disputed by competent evidence on both sides, it is inappropriate for resolution at summary judgment.

### B. County Defendants' Motion for Summary Judgment

 In their motion for summary judgment, the County Defendants argue that (1) both County Defendants should be dismissed because they had no role in CCS's medical policy decisions, (2) the Sheriff should be dismissed as he is not a signatory to the contract between McHenry County and CCS, and (3) both of them

should be dismissed pursuant to the doctrine of qualified immunity..

·The first argument is without merit for the same reason the argument failed in King. Specifically, "[t]he County's express policies as embodied in the contract show that the County delegated to [the jail's medical vendor] · final authority to make decisions about inmates' medical care,"· and "the private company's policy becomes that of the County if the County delegates final decision-making authority to it." Id. at 1020–21. Here, the contract between CCS and McHenry County similarly gave CCS broad discretion to "provide or arrange for· health care services for the Jail Population while such individuals are incarcerated at the Jail." Additionally, no provision of· the contract required the County Defendants' approval before CCS could enact policies or policy changes for provision of inmate care. Accordingly, CCS's policy, complained of above, is deemed by law to be the policy of the County, and it "cannot shield itself from § 1983 liability by contracting out its duty to provide medical services." King, 680 F.3d at 1020.

The second argument is more complicated, wherein the County Defendants argue that, because the Sheriff is not a signatory to the contract, he cannot be held liable in his official capacity to Treadwell even though he was the agency through which the contract was executed. Ultimately, however, the court concludes this argument is unpersuasive ·and needlessly formalistic. The Seventh Circuit has held that the Sheriff of a county and the County itself are typically. separate and distinctly suable entities for § 1983 purposes. See Franklin v. Zaruba, 150 F.3d 682, 685–86 (7th Cir.1998). However, the Seventh Circuit has also .held that the county sheriffs in Illinois, are always the "final. policymak-ing authority over jail operations." DeGenova v. Sheriff of DuPage Cnty., 209 F.3d 973, 976 (7th Cir.2000). Moreover, although the Sheriff is not a signatory to the contract, the language of the contract shows that he was intended to, and the. facts suggest did, function as the county's agent in the execution of the contract between McHenry County and CCS and it was a sheriff's deputy who was provided by the County Defendants to be deposed in order to. explain their policies. The contract even purports to bind the Sheriff, as an agent of the County, to particular duties, including HIPPA compliance, record keeping, and security duties. Even if the Sheriff is not a signatory, the evidence suggests he has acquiesced to being bound to the duties set out therein, and therefore cannot evade liability due to the fact that the contract is solely signed by a County official. Finally, the court notes the highly formalistic nature of this argument: the County will end up having to pay any damage award regardless of whether it is the correct direct defendant or whether it is a defendant simply pursuant to its duty to pay damages against the Sheriff in his official capacity. See Carver v. Sheriff of LaSalle Cnty., 324 F.3d 947, 948 (7th Cir.2003) (noting that a county must pay any damages against a sheriff in his or her official capacity).

■ The final argument, .concerning qualified immunity, also fails. The "Supreme ·Court [has] authoritatively determined . . . that governmental bodies do not enjoy qualified immunity from damages actions under 42 U.S.C. § 1983." Hedge v. Cnty. of Tippecanoe, 890 F.2d 4, 8 (7th Cir.1989). Here, Treadwell's Monell claim against the County Defendants is just such an action, and therefore qualified immunity does not apply. See also Armstrong v.

Squadrito, 152 F.3d 564, 582 (7th Cir.1998) ("We are left with one remaining concern. Should we affirm summary judgment because the defendants receive qualified immunity? The district court said yes, we say no. With regard to Armstrong's <u>Monell</u> claims, the answer to that question could not be more straightforward. A suit against an individual in his or her official capacity is a suit against the municipality, and a municipality does not enjoy qualified immunity from a damage claim under 42 U.S.C. § 1983.").

Accordingly, for the foregoing reasons, the County Defendants' motion for summary judgment is denied.

## III. CONCLUSION

CCS's motion for summary judgment is granted in part and denied in part. In particular, summary judgment is granted as to any claim that the protocol itself is determinative of deliberate indifference or that CCS's failure to provide Orap was deliberately indifferent. However, the motion is denied to the extent it seeks judgment on the portion of Treadwell's claim arising from the decision to wean him from Klonopin in the first place. Treadwell's motion for partial summary judgment is denied. The County Defendants' motion for summary judgment is denied.